JOHN ROSS HUNT

*v.*

STATE OF TENNESSEE.

*(Knoxville,* September Term, 1956.)

Opinion filed June 7, 1957.

ROY N. STANSBERRY, Knoxville, for plaintiff in error.
THOMAS E. FOX, Assistant Attorney General, for the
State.

MR. JUSTICE BURNETT delivered the opinion of the Court.

Hunt was indicted and tried for the offense of first degree murder. The jury found him guilty of second degree murder and fixed his punishment at ten years in the penitentiary, from this judgment he has seasonably appealed and assigned errors, filed briefs and we have heard arguments. We now have the matter for determination and disposition.

About 2:30 A.M., in the morning on April 15, 1956, the wife of deceased had started across a foot bridge which crosses Third Creek where Knott Avenue dead-ends into Third Creek, just on the edge of the City of Knoxville. This deceased and his wife and step-children had been put out of a house that they had rented for a few weeks because of non-payment of rent. This woman testifies that she and her two small children, a little girl and a boy about 14 years old (an older boy who had gone on

in front) were on the way to her brother's house which was near this foot bridge. She says as she started across the bridge a man attacked her and slapped the little girl. She says that there was no particular harm done but that he put his arm around her and she was afraid and she screamed and hollered. As a result of this attack her son ran to the house of her brother who was in bed. When he got there his step-father was there along with the brother of this step-father. This step-son told them what had happened and the deceased, step-father and husband of the woman, and his brother immediately ran down to the foot log which was some 40 or 50 yards away and was informed by the deceased's wife that she had been attacked by this man and that the man had gone in the direction of one Billy Cole's house, which is likewise some 40 or 50 yards away from this foot log.

As a result of this information the deceased and his brother Eugene Daniels started to Billy Cole's house looking for the man that had attacked the deceased's wife. The testimony offered on behalf of the State by the deceased's brother is that when they got to Billy Cole's house they "pecked on the door" and some woman said something and that they then asked if the man was in there who had attacked Mrs. Daniels. They say then, very shortly thereafter, that the defendant jumped off a porch and came at them and this brother says he saw a knife in the defendant's hand. This brother testifies that the deceased pushed this brother out of the way and said something to the effect, 'let me at him', and they then entered mutual combat. After they had fought for a while the deceased got up and left and ran down the path to the foot log and when he got there he was holding

his chest. He started to walk across the foot log and fell in the water and when he was pulled out of the water, apparently he was dead. The brother testifies that the defendant was still after him and they were kicking and fighting and that the last he saw of the defendant was that defendant was crawling on his hands and knees back up toward the Billy Cole house.

As far as the record shows the only stab wounds or knife wounds on the deceased was the wound that went in part of the body just outside of the heart. The homicide officer testified that this caused death. The doctor says he did not probe the wound but probably there is sufficient proof from the description of the wound and description of the fight that this was the cause of death.

The record shows without controversy that the defendant was cut at least three times rather severely in this fight. One of these cuts was on the forearm leaving large scars evident at the time of trial, the other two were about the stomach and body. As a result of these cuts the defendant, plaintiff in error here, spent ten days in the hospital.

The defendant took the witness stand in his behalf and he is supported to some extent by Billy Cole and another woman who was with him prior to the fight. Be that as it may the testimony of the defendant is that he was walking up this path toward Billy Cole's house when the two men attacked him and had an opened knife and were trying to cut him with it. He says as a result of this he got his knife out of his pocket as quick as he could to defend himself. He had no idea who he cut or what he cut or how he cut, but that he was trying to defend him-

self because of the attack of these two men. He likewise says that after the original fight and the men had gone down to the foot log that he went on up to the house and the men came back a second time. He is supported to some extent in this statement by the women. These women are contradicted by previous statements that they had made to the attorney general which had been tape-recorded immediately after this homicide took place.

Be all this as it may, it clearly appears to us and there is ample evidence in the record that this was a mutual combat after it got started.

The defendant of course denies that he ever saw the woman or attacked her at all. None of these parties, the deceased or the defendant knew each other as far as this record shows prior to this homicide. He tells a story about he and Billy Cole and another woman going over to get some sandwiches and that Billy Cole had driven the car and they had parked and were on the way to the Billy Cole house (the women had walked on in front of him) when he was attacked by these two men.

■ ■ To say the most on behalf of the State's evidence the deceased and his brother were the originators of this fight and attack. If we take the State's theory of it the defendant was in the house at the time these two men came after him and he voluntarily came out and entered into a mutual combat. The jury and trial judge at least believed this and we find no reason to disbelieve it.

Under such a situation as this the homicide is voluntary manslaughter and not second degree murder. Our

statute, Section 39-2409, T.C.A., defines manslaughter thus:

"Manslaughter is the unlawful killing of another without malice, either express or implied, which may be either voluntary upon a sudden heat, or involuntary, but in the commission of some unlawful act."

Clearly the authorities support the proposition at common law a killing ensuing from a sudden transportation of passion or heat of blood, as in a fight or sudden combat, is manslaughter. *State v. Durham,* 201 N.C. 724, 161 S.E. 398.

It is said in 40 C.J.S. Homicide sec. 48, Subsec. (b), p. 912, that:

"A homicide resulting from mutual combat or the excitement and heat of passion arising therefrom is voluntary manslaughter. There must be a mutual intention to fight, and, it has been held, deadly or dangerous weapons must be used."

In support of this statement from the text of *Corpus Juris Secundum* many cases are cited. One of these such cases is that of *State v. Miller,* 223 N.C. 184, 25 S.E.2d 623. In this case the defendant willingly engaged in a gun battle and out of passion aroused by an unprovoked assault. The court there held that he was guilty of manslaughter even though he was attacked on his own premises. Obviously the facts of this case are similar to those herein.

After a very thorough study and consideration of the matter we are satisfied that under the facts of this case the defendant is only guilty of voluntary manslaughter.

For the reasons expressed we must overrule all assignments of error except that going to the degree of the crime of which the plaintiff in error was convicted. In conformity with the view herein expressed the judgment is corrected so as to fix the term of the plaintiff in error's imprisonment in the penitentiary at a minimum provided by law for voluntary manslaughter as shown by Code, Section 39-2410, T.C.A. Of course the correction of this judgment must and is done with the consent of the State. If the State does not consent then the case will be reversed and remanded for a new trial. All of this is done in conformity with the reasons and authority which are fully and ably set out in *Forsha v. State*, 183 Tenn. 604, 194 S.W.2d 463.