BENNETT GANN, Plaintiff in Error,

*v.*

STATE OF TENNESSEE, Defendant in Error.

383 S. W. 2d 32.

(*Nashville*, December Term, 1963.)

Opinion filed October 9, 1964.

712

MADDUX, CAMERON & JARED, Cookeville, for plaintiff in error.

GEORGE F. McCANLESS, Attorney General, THOMAS E. Fox, Assistant Attorney General, for defendant in error.

MR. JUSTICE WHITE delivered the opinion of the Court.

The plaintiff in error, the defendant in the court below, was convicted of murder in the second degree and punishment was fixed at not more than fifteen years in the State Penitentiary. A motion for a new trial was seasonably made and overruled, and the defendant has perfected his appeal. He has assigned as error (1) that the evidence preponderates against the verdict of guilty and in favor of his innocence; (2) that the verdict is contrary to the law and to the evidence; and (3) that there is no evidence to support the verdict of the jury.

In order for the Court to pass upon these matters, it is necessary to outline briefly the evidence upon which the defendant was found guilty as aforesaid. The facts are in sharp dispute. However, it does appear without dispute that the defendant, Bennett Gann, and Roxie D. Richardson, the daughter of the deceased, had been living together for approximately two years in Kentucky and Indiana as common law husband and wife. Some misunderstanding developed and Roxie D. Richardson returned from Kentucky to her parents' home. A few days later the defendant brought her clothing and personal effects to the home of Frank Richardson, her father. An argument took place which resulted in a gun battle wherein Frank Richardson, 74 years of age, was slain.

Several members of Frank Richardson's family testified in the State's behalf—Emma Jane Richardson, his widow; Robert Richardson, a son; and Francis and Gennie Faye Richardson, two younger sons. Their testimony was that on the day of the gun battle the defendant asked Roxie D. Richardson to get in the car with him to talk prior to unloading her clothing. The defendant then began cursing in a loud voice whereupon the deceased asked him to leave his premises. The defendant refused, so the State's witnesses said, and armed himself with a gun, stating ''I will leave when I get damn good and ready.''

The deceased then armed himself with a twelve gauge shotgun, descending from his porch into his yard as he approached the defendant. His wife accompanied him armed with a small pistol, a .22 caliber.

There was further testimony that the defendant began firing at the deceased and his wife from behind his car,

using the top of the car as a resting place for his pistol. When Frank Richardson got close to the defendant's car, the two began wrestling for the deceased's shotgun, causing it to discharge into a nearby tree.

In the meantime, Robert Richardson, using his mother's pistol, attempted to shoot the defendant at close range, but the weapon would not fire. He then began to pistol whip the defendant with the gun. At this time, the defendant fired several more shots, wounding Robert Richardson and fatally wounding Frank Richardson.

Several State witnesses stated that when the defendant refused to leave the premises prior to the first pistol shot, Mrs. Richardson instructed her son, Gennie Fay, to drive to a nearby telephone and "call the law." The defendant, thereupon, fired shots over or at Gennie Faye's car. Upon cross-examination it was brought out that such testimony was not given at the preliminary hearing held in the case, and the credibility of those witnesses was thereby questioned.

The defendant testified that he had always been on good terms with the Richardsons and bore them no malice. On the day of the incident, Bennett Gann stated that Mrs. Richardson invited him inside the house. When he refused to get out of his car, Frank Richardson and Mrs. Richardson armed themselves and approached him saying, "You get out of here you son of a bitch you * * * I'll kill you."

According to the defendant Mrs. Richardson came around one side of the car, while the deceased approached from the other side. Robert Richardson also attacked the defendant with a .22 rifle and later began pistol whipping the defendant. The defendant further testified

that he did not fire until he had been knocked down and was being beaten to death by Robert Richardson. He then fired several shots, wounding Robert Richardson in the arm, but was of the opinion that he did not shoot Frank Richardson, the deceased. The defendant also put into evidence the hat which he wore on that day in which there were two alleged bullet holes.

The testimony of Roxie D. Richardson generally corroborated the defendant's testimony. However, the jury may not have relied upon her testimony because of her antagonistic, evasive, and inaccurate answers to the questions of the prosecutor. After reading the record, we are inclined to agree with them. The following excerpts from her testimony are illustrative of this fact:

"Q. Did you live together up there?

"A. Can you prove I lived with him?

"Q. Did you live with him?

"A. Did I say I did?

\* \* \* \* \* \* \* \* \* \* \*

"Q. Well, now, you just now swore that you did have illicit relationships with defendant Gann before you got a divorce. \* \* \*

"A. Have you got proof on that? An eye witness?"

In general, the proof presented in behalf of the defendant set forth the following defenses: (1) the deceased person was not actually killed by the defendant; (2) the defendant was acting in self-defense when he fired his pistol; and (3) there was no malice on the part of the defendant which is a necessary element in a second degree murder conviction.

■■ In considering this case on appeal, we do so with the presumption that the defendant is guilty as found by the jury and approved by the court. His presumption of innocence disappears after conviction and he is presumed to be guilty here. The jury and the trial judge see and hear the witnesses face to face and are in a far better position to determine who is correctly detailing the truth of the matter than are we who see only the record. *Holt v. State,* 210 Tenn. 188, 357 S.W.2d 57 (1961); *Gang v. State,* 191 Tenn. 468, 234 S.W.2d 997 (1950); *Christian v. State,* 184 Tenn. 163, 197 SW.2d 797 (1946); *Ferguson v. State,* 138 Tenn. 106, 196 S.W. 140 (1917).

■■ Likewise, it has long been the law of this State that the credibility of witnesses and conflicts in testimony are settled by the verdict of the jury when approved by the trial court. In this case much of the evidence presented by the State is diametrically opposed to the statements of the defense witnesses. Under such circumstances, it is the duty of the jury to determine the truth of the situation, following closely the instructions of the judge. In so doing, the jury should reconcile any conflicts of testimony which may be reconciled, but if such differences cannot be reconciled, then the duty of the jury is to accept that which they think true and reject the false. *Holt v. State,* supra; *Anderson v. State,* 207 Tenn. 486, 341 S.W.2d 385 (1959).

■ Hence, we must examine the various defenses presented in behalf of the defendant in the light of precedents. The first defense is that the evidence presented was insufficient to support a verdict that the defendant, in fact, fired the fatal bullet which killed Frank Richardson.

On this point, the record shows that Dr. E. M. Dudney, testified that when he examined the body of the deceased a bullet was found in his inferior vena cava. Dr. Dudney testified that the bullet wound caused the stomach cavity to be filled with blood and ''I am sure that the bleeding was the immediate cause of death.'' A complete autopsy was not performed.

Secondly, Robert C. Goodwin, firearms examiner for the Tennessee Bureau of Investigation, testified that the bullet extracted from the deceased's body would have had to come from the gun which the defendant fired. The defendant's gun was not operational and could not be test-fired to compare bullet markings. However, Mr. Goodwin established by visual examination of the groove markings that the bullet ''would have had to come from this gun here'', the gun fired by the defendant.

Of the weapons examined all but the defendant's gun had rifling specifications that consisted of six lines and grooves that inclined to the right, which would twist the bullet to the right as it left the barrel. The defendant's weapon, a Colt Woodsman, semi-automatic pistol, contained six lines and grooves that inclined to the left, making it the only weapon from which the fatal bullet could have been fired.

We think the above testimony constitutes the best available evidence and is sufficient to uphold the jury verdict that the fatal bullet came from the gun admittedly fired by Bennett Gann, and was the cause of death of the deceased person. In our opinion the evidence does not preponderate against the verdict and in favor of the innocence of the accused, but rather it fully supports the verdict.

The defendant next contends that the verdict is contrary to the law and, therefore, should be reversed. Embodied in this assignment of error is the claim that the defendant was acting in self-defense and, therefore, the homicide was justifiable.

A guilty verdict, as previously discussed, accredits the testimony of witnesses for the State and establishes their credibility, and raises a presumption of the defendant's guilt, placing upon the defendant the burden of showing that the evidence preponderates against the verdict. In our opinion the defendant has not carried the burden.

According to the State's witnesses, which we must accept as true upon appeal, the defendant drove his car to the premises of Frank Richardson and refused to leave. An argument ensued during which the defendant invited Frank Richardson to get his gun. As the deceased approached the defendant, the defendant fired several shots at the deceased and his wife. A struggle for the deceased's shotgun then took place, resulting in the discharge of the shotgun. Upon further wrestling, the defendant then fired the shot that killed Frank Richardson and fired another shot which wounded Robert Richardson. The defendant then left the premises offering no assistance to any of the wounded parties.

We think that under these facts the defendant is unable to rely upon the doctrine of self-defense. The law of Tennessee is that an aggressor, who produces fear or apprehension of death or great bodily harm in the mind of his adversary, can not lawfully defend his life against the deadly defensive act of his adversary by taking the latter's life, until he has restored his right of self-defense,

lost by his initial fault, by abandoning and withdrawing from the contest and giving notice of the fact to the adversary. The aggressor's act is unlawful and felonious, and his adversary's act lawful and necessary, and the former, as the guilty party, must bear all unavoidable consequences flowing from his wrongful act. *Irvine v. State,* 104 Tenn. 132, 56 S. W. 845 (1900) ; *Cooper v. State,* 123 Tenn. 37, 138 S.W. 826 (1909).

The record contains ample evidence which would justify the verdict that the defendant was the initiator of the incident which resulted in the death of Frank Richardson. The jury, after hearing all of the witnesses, has concluded that the State's version most closely represents the truth and we feel bound to accept its determination under the present circumstances.

The defendant, finally, contends that the evidence was insufficient to support the jury verdict of second degree murder. The theory of this assertion is that the element of malice has not been proved and, therefore, the charge should be reduced from second degree murder to voluntary manslaughter.

In support of this contention the defendant points out the testimony in the record showing that he had always been on friendly terms with Frank Richardson. Also, he contends that any presumption of malice would be rebutted because of the suddenness and violence of the provocation, citing the case of *Leake v. State,* 29 Tenn. 144, as follows :

"* * * the presumption of malice arising in law from this killing, and from the deadly character of the weapon used, is rebutted by the proof of the suddenness of the rencounter (sic), the violence of the assault on the

part of the deceased, and the dangerous nature of the weapon used by her. And in the absence of proof of express malice, this killing must be held to have been the result of sudden heat and excited passion, and, therefore, not murder in either the first or second degree.'' 29 Tenn. at 149.

We have given close attention to this claim and have carefully examined all of the cases presented in defendant's brief. We have also taken notice of the case of *Hunt v. State,* 202 Tenn. 227, 303 S.W.2d 740 (1956), not cited by either party.

 The law in Tennessee is that all homicide is presumed to be malicious, in the absence of evidence which would rebut the implied presumption. *Coffee v. State,* 11 Tenn. 283, 24 Am.Dec. 570 (1832); *Witt v. State,* 46 Tenn. 5 (1868); *Gray v. State,* 63 Tenn. 331 (1874); *Harper v. State,* 206 Tenn. 509, 334 S.W.2d 933 (1960).

 Likewise, if a weapon is handled in a manner so as to make the killing a natural or probable result of such conduct, malice will be presumed from the use of the said weapon. *Lewis v. State,* 202 Tenn. 328, 304 S.W.2d 322 (1957); *Nance v. State,* 210 Tenn. 328, 358 S.W.2d 327 (1962). Thus, the proof of the use of a deadly weapon is sufficient to sustain a charge of second degree murder unless it is rebutted by other facts and circumstances. *Bostick v. State,* 210 Tenn. 620, 360 S.W.2d 472 (1962); *Smith v. State,* 212 Tenn. 510, 370 S.W.2d 543 (1963).

 The question, therefore, reduces itself to whether or not the presumption of malice has been rebutted by the facts and circumstances. We think not. The testimony of the State's witnesses, which we are bound by because it has been believed by the jury, points out that the defend-

ant was on the deceased's property at the time of the fatal shooting; the defendant carried with him a deadly weapon; the defendant was responsible for the argument that ensued; the defendant provoked the use of deadly weapons by saying, "Put your gun where your mouth's at"; the defendant fired several shots at his adversary before he was fired upon; and the defendant refused to help care for the wounded man before he left the premises.

All of these facts are sufficient, in our opinion, to confirm the finding of malice which was already presumed because of the use of a deadly weapon. To hold otherwise would be to utterly disregard the finding of the jury.

Nor are we swayed by the argument that there was present "suddenness" or "excited passion" as would rebut the presumption of malice in this case. Here, the defendant was on the property of the deceased person, threatened the deceased with a deadly weapon, and in the jury's opinion, provoked the entire incident. He will not be now heard to say that he is excused from malice merely because an emotional and violent encounter took place. The defendant must have known full well that such conduct would have produced fear and apprehension of death in the mind of his adversary, and might provoke an incident such as in fact occurred.

We have considered the case of *Hunt v. State,* 202 Tenn. 227, 303 S.W.2d 740 (1956), wherein this Court reduced a second degree conviction to voluntary manslaughter on the grounds that mutual combat took place among the defendants and deceased person. However, we are satisfied that this case is distinguishable since in the Hunt case the defendant did not originate the fight,

whereas in the case at bar defendant actively provoked the incident which resulted in the death of Frank Richardson.

We, therefore, overrule all assignments of error, and the judgment of the lower court is affirmed.

BURNETT, CHIEF JUSTICE, DYER and HOLMES, JUSTICES, and CLEMENT, SPECIAL JUSTICE, concur.