JIMMIE LEE JACKSON, Plaintiff in Error, v. STATE OF TENNESSEE, Defendant in Error.

**466 S.W.2d 232.**

Court of Criminal Appeals of Tennessee. Dec. 31, 1970.

Certiorari Denied by Supreme Court April 5, 1971.

Hunter Lane, Sr., J. Frank Hall, Hugh W. Stanton, Jr., Asst. Public Defenders, Memphis, for plaintiff in error.

David M. Pack, Atty. Gen., Thomas E. Fox, Deputy Atty. Gen., Nashville, Phil M. Canale, Jr., Dist. Atty. Gen., Arthur Bennett, Asst. Dist. Atty. Gen., Memphis, for defendant in error.

## OPINION

MITCHELL, Judge.

Jimmie Lee Jackson, represented by retained counsel in the Trial Court, but represented by the Public Defender for this appeal, has appealed his conviction of receiving stolen property over the value of $100.00 and a sentence of three years in the penitentiary from the Criminal Court of Shelby County, Honorable Odell Horton, Judge presiding.

We shall refer to the plaintiff-in-error by name or as the defendant and to the defendant-in-error as the State.

The indictment was returned January 10, 1969 charging the defendant in the first count with burglary in the third degree of the business house of Perel & Lowenstein, a corporation, about the — day of November 1968, the second count charged the defendant with grand larceny of one camera of the value of $106.50 and one record player of the value of $48.29 and in the third count with knowingly receiving and concealing the stolen property described in the second count.

On October 24, 1969 the defendant was convicted of receiving stolen property over the value of one hundred (100) dollars, the jury fixed the punishment at not more than three years in the State Penitentiary, upon which the court pronounced judgment of not more than three years in the State Penitentiary and that he be rendered infamous.

After his motion for a new trial was heard and over-ruled the defendant appealed to this Court and assigned errors.

On April 17, 1970 the Trial Court found the defendant was financially unable to employ counsel, and ordered the Public Defender to represent the defendant for the appeal.

On November 11, 1968 at about 12:30 A.M. Herbert Lipman, manager of Perel and Lowenstein's Store at 144 South Main Street, Memphis, Tennessee, received notice that there had been a breaking of a window at the store. He hurried at once to the store and found that a large plate glass show window had been broken. In the window there had been displayed a portable typewriter, Polaroid camera kits, a record player, luggage and other commodities of that nature. The Polaroid camera valued at $106.50 and a record player valued at $48.29 had been removed from the display in the broken show window and within a few minutes were found in the possession of the defendant at the time he was arrested.

Shortly after midnight on the night of November 11, 1968 William Sandford Nesbitt, Jr., employed by Guardsmark, an Industrial Security Firm, was patrolling

Beale Street, Third Street, and Main Street at the time of the burglary. He saw the defendant carrying a hi-fi portable record player and a camera, new merchandise. He told Nesbitt he had just arrived there from New York, that he was a little turned around and was trying to get to his Mother's house on Greenwood. Nesbitt's suspicions were aroused, he gave defendant directions how to get a cab to go to his Mother's house on Greenwood, and Nesbitt told a Memphis House Cleaning man nearby to keep an eye on the defendant and get the number of the cab if he got in one.

Then a car came down the alley with the lights off which Nesbitt then recognized as a police car. He joined the police in the car and told police that he had seen the defendant carrying a hi-fi record player and a camera. Then they drove around to Hernando Street and saw the defendant standing on the corner of the alley with the camera in his hand talking to about 4 men standing there. Then the defendant ran with the camera in his hand, without taking the hi-fi which he left on the sidewalk. The police fired, the defendant was hit in the heel and fell. Mr. Nesbitt identified the defendant in the courtroom and pointed him out.

The officers handcuffed the defendant. He said the officers shot him for nothing.

Carl Watson, director of Security for Gordon's Transport, formerly with the Memphis Police Department testified that on November 11, 1968 he heard the A. D. T. which was the burglar alarm, responded to the call, moved to the vicinity of the burglarized store, drove down an alley saw Guard Nesbitt, who told them what he

had seen, Nesbitt joined them, they drove on and saw the defendant with a camera in his hand standing in front of a building talking to some other colored men. He identified the defendant in the courtroom as the man he had seen with the camera. The police car stopped, Watson jumped out and the defendant fled. The officer called to the defendant to come back and fired his pistol over his head and another shot off to the side, the defendant ran about 50 feet, turned right into an alley fell down hollering, he'd been shot. The officer took the camera from the defendant and handcuffed him. He examined the defendant trying to find a bullet wound and found a small puncture wound in his heel. The defendant was wearing low cut tennis shoes.

The defendant was warned of his rights under the Miranda rule and made the following statement:

"That he had purchased these two articles from a male colored he did not know on Calhoun Street for approximately $20.00. He stated he'd been to Club Paradise earlier that evening and left there to get some more whiskey and had run into this male colored down there on Calhoun. He stated that he did not know his name and he denied he broke the window at Perel and Lowenstein's."

The defendant was taken to St. Joseph's Hospital where Mr. Watson left him in the treatment room after the doctor came. The defendant was later taken to John Gaston Hospital.

J. M. Prescott with the Memphis Police Department for 18 years testified that he investigated the burglary. That he went to Perel and Lowenstein's talked with Mr.

Hodnett in charge of Security and examined the store window in question. He verified the serial number of the hi-fi taken. The only things missing from the show window were the camera and the hi-fi. Then he went to the hospital where he talked with the defendant who was advised, that he had the right to remain silent and that anything he said could be used against him in a court of law. He was also advised that he had the right to have a lawyer, either of his own choice or court-appointed one if he could not afford one and to talk to his lawyer before answering any questions and to have him with him during questioning if he wished. The defendant stated that he had been down on Hernando Street since approximately 7:00 P.M. on the 10th, that he had been drinking and was in and out of Robinson's Cafe on Hernando, that he walked up Hernando to a small street by Handy Park where he met an unknown male white, he approached him and asked him did he want to buy this camera and stereo for $30.00. He stated that he wouldn't buy it for $30.00, he got him down to $20.00 and he did buy it, and that he had had it about 15 minutes prior to the police arresting him and that he ran from the police because he was frightened.

Prescott testified further that the defendant was in the hospital under treatment and he was informed they were going to operate on his foot. A large cast was on his foot.

Watson and Prescott testified the defendant was told he was under investigation for burglary.

The defendant testified and denied that he burglarized the Perel and Lowenstein Store on November 11, and did not steal the Polaroid Camera or the stereo. That he

had on a few occasions pleaded guilty and served his sentence in the workhouse. That after he got out of the workhouse, he went to work for Owens-Spruce Snack Company. That they told him they couldn't use him because he had been in trouble before. That he worked a week for an oil painter, and the same thing happened there. That he had ten different jobs, when they found he was an ex-convict, "off he went." That he worked for National Bedding Company for two weeks. The defendant admitted he had been convicted of larceny of an automobile in December 1962, and convicted of burglary in two cases in May 1964.

He further testified that about 8:00 on November 10th, a Saturday night, he was at this cafe on Vance, it was on Vance and Hernando. He left there about 15 to 11:00 to get back and see the show at Club Paradise which is 645 East Georgia.

That after he came out of the Music Box somebody said he needed money and asked him did he want to buy a Polaroid Camera and a hi-fi and he told him no that he did not have that kind of money. He offered to sell it cheap and the defendant gave him $20.00 for the stuff, took it and went on down through the alley where he saw Willie Nesbitt. He denied he told Willie Nesbitt he had come from New York. The man asked him if he wanted to sell the stuff and he replied that he'd just bought it. He said he'd pay good for it. That he heard some hollering, a shot was fired and he was hit in the heel. That he stayed in the hospital from November 11 to December 20.

The defendant's assignments of error are as follows:

1. The verdict is contrary to the weight of the evidence.

2. The verdict is contrary to the law and the evidence.

3. There is no evidence to support the verdict.

4. The Court erred in overruling the motion of the defendant to dismiss the indictment and the proceedings herein upon the grounds that the defendant was arrested on November 11, 1968 and held without being formerly charged with a crime until December 21, 1968, in violation of Article 6 and Article 14 of the Constitution of the United States; that he was thereby denied the right of due process and because he was held for so long a period that his family and friends were unable to aid him in the preparation of his defense or to employ counsel to prepare his defense for him.

Assignments of error 1, 2, and 3 challenge the evidence and will be considered together.

A few minutes after midnight on November 11, 1968, Security Guard Nesbitt, while patrolling Beale, Third and Main Streets met the defendant within two or three blocks of the burglarized store. The defendant was carrying a portable hi-fi and a camera, new merchandise which had been stolen a few minutes before from the Perel and Lowenstein's Store. The defendant walked on. Almost instantly the police car appeared. Nesbitt told the police what he had seen, they followed in the direction the defendant had taken, called on him to stop, he fled, the police fired, the defendant fell and they took him into custody and recovered the hi-fi and the camera.

Thus the defendant was found in the exclusive posses-

sion of the stolen goods recently after they were stolen, and was unable to give a straightforward satisfactory explanation of the possession of the stolen goods.

Our Supreme Court held in State v. Veach, 456 S.W. 2d 650, 651 that:

> "In order to sustain a conviction for concealing stolen property, besides proof of the theft and defendant's actual or constructive possession soon thereafter, it is necessary to show that the defendant knew that the goods were stolen. Kessler v. State (1967), 220 Tenn. 82, 414 S.W.2d 115. In deciding this issue the jury is entitled to look at all the evidence, circumstantial and otherwise, showing guilty knowledge, or the lack thereof, on the part of the defendant, and as enunciated in Tackett v. State (1969), Tenn., 443 S.W.2d 450, an inference of guilty knowledge may arise from the unexplained possession of stolen property shortly after commission of the theft.

> "And unless this exclusive possession of stolen property * * * is accounted for in a straightforward, truthful way, and unless the jury finds the explanation reasonable and satisfactory, the jury would be warranted in returning a verdict of guilty of receiving and concealing stolen property."

The trial jurors are the judges of the weight and credibility of the testimony. A guilty verdict approved by the Trial Judge accredited the testimony of the witnesses for the State, and established their credibility, and displaced the presumption of the defendant's innocence and raised a presumption of guilt, and placed upon him, on appeal, the burden of showing that the evidence pre-

ponderated against the verdict, and in favor of his innocence. Anderson v. State, 207 Tenn. 486, 341 S.W.2d 385. Gann v. State, 214 Tenn. 711, 383 S.W.2d 32. The first three assignments of error are without merit.

■ Turning to the fourth assignment of error, where the defendant complains that he was held from November 11, 1968 until December 21, 1968, without being formally charged with a crime, and that being held 40 days, his family and friends were unable to aid him in preparation of his defense.

The record shows the indictment was returned against him January 10, 1969, that he was tried October 23, 1969, and that he was ably represented by privately retained counsel, Honorable Hunter Lane, Sr.

At the trial the only witness offered in behalf of the defendant was the mother, who was at home at the time of the burglary and knew nothing about the burglary case other than the fact that she testified she had never seen the (claw) hammer found at the scene.

There is no showing that there was any other proof the defendant might have introduced. There is nothing to show that anything was done to the defendant or about him during the time between November 11 and December 21, that had any tendency to prejudice his rights or prevent him from bringing any proof in his behalf. In fact there was nothing to show that he was deprived of making any preparation that he could or would have made for trial had a formal charge been lodged against him earlier by service of a formal warrant.

The delay between the commission of the crime and

the service of a warrant on the defendant was brought about because the defendant was confined in the hospital from November 11 to December 21, being treated and nursed after a wound in the heel which was the result of his fleeing from the police. A part of the time he was in the hospital he was undergoing surgery and had a cast on his leg, and it would have been considered unwise to bring him into court, even if a warrant had been served on him. It is reasonable to assume that the doctors and hospital authorities would not have permitted his removal until he was discharged from the hospital on competent medical authority.

The fourth assignment of error is likewise overruled. The defendant has failed to show that the evidence preponderates against the verdict and in favor of his innocence.

The jury fixed the sentence at not more than three years in the State Penitentiary, the Trial Judge pronounced judgment for not more than three years, we correct the judgment by pronouncing judgment for not more than three years and not less than three years in the penitentiary for receiving stolen property.

Thus modified the judgment is affirmed.

We express our thanks to court appointed counsel for conscientious useful service rendered to the defendant on this appeal.

OLIVER and GALBREATH, JJ., concur.