Laverne McDONALD, Plaintiff-in-Error,

v.

STATE of Tennessee, Defendant-in-Error.

Court of Criminal Appeals of Tennessee.

Nov. 19, 1971.

Certiorari Denied by Supreme Court
Feb. 22, 1972.

Walter L. Fuller, Jr., and Jennings B. Meredith, Oak Ridge, for plaintiff in error.

David M. Pack, Atty. Gen., Bart Durham, Asst. Atty. Gen., Nashville, Arzo Carson, Dist. Atty. Gen., Huntsville, Walter E. Fischer, Asst. Dist. Atty. Gen., Clinton, for defendant in error.

OPINION

MITCHELL, Judge.

Laverne McDonald, whom we refer to as the defendant or by name, was indicted on

May 26, 1970 in the Criminal Court of Anderson County, Tennessee upon an indictment charging burglary in the first degree in the first count and in the second count charging assault and battery with intent to commit rape, on the 25th day of October, 1969.

Prior to the trial, the defendant's mother made application for a comprehensive psychological evaluation of the defendant. The court ordered that the defendant be examined at the Oak Ridge Mental Health Clinic for a finding concerning his mental competency to advise with counsel and to stand trial in this case. This order was complied with and on July 10, 1970 the medical report was filed showing that in the opinion of the medical examiner he was mentally competent to stand trial.

The defendant Laverne McDonald was tried on January 6, 1971 and convicted of burglary in the first degree with a sentence of five years in the penitentiary and convicted of assault and battery with intent to commit rape and a sentence of twelve years in the penitentiary.

After the motion for a new trial was heard and overruled, the Trial Judge Honorable D. L. Hutson pronounced judgment and sentence upon the defendant for not less than five (5) nor more than five (5) years in the penitentiary for first degree burglary and for not less than ten (10) years nor more than twelve (12) years in the penitentiary for assault and battery with intent to commit rape, and ordered that he be rendered infamous and pay the costs of the prosecution. The court also ordered the sentences to be served consecutively.

The defendant prayed and was granted an appeal and ninety days were allowed to file a bill of exceptions.

The defendant has assigned the following errors:

1. There is no material evidence to support the verdict.

2. The evidence preponderates against the verdict of guilty and in favor of the Defendant's innocence.

3. The Jury's verdict evidences that they acted out of prejudice, passion and caprice.

4. The Honorable Trial Judge erred in overruling Defendant's motion for directed verdict, and that the prosecution had not proven venue and jurisdiction.

5. Prosecution's evidence was so contradictory as to be too weak to support the verdict against the Defendant.

On October 25, 1969 Mrs. Vivian Sewell, wife of John Sewell, lived with her husband and her children at 108 Robin Lane, Oak Ridge, in Anderson County. Her husband worked at night and she had left the back door unlocked for him. The victim, Mrs. Sewell had retired about eleven o'clock P.M. and was asleep in her bed. She was awakened sometime in the morning before daylight by something being placed over her mouth. A man threw himself upon her and was trying to have relations with her. He was trying to hitch her gown up. To omit the details, the man committed an assault and battery upon her with intent to have unlawful carnal knowledge of her forcibly and against her will.

She struggled to free herself of his grasp and lost her breath and slumped and his hand gave way momentarily and she was able to move her head away and she screamed and yelled for the children. When she screamed the man jumped up and ran. The children got up and called the police.

After the police came they found in the bed twigs and sticks and a black glove beside the bed that did not belong there. The victim thought it was a brown leather glove or leather substitute, the lining of which was torn. Her two purses, one had been hanging on the closet door and one had been on the chest in her room, had been brought into the kitchen and opened

and the contents laid out, partly on the washer.

As a result of the attack, and her struggling to free herself, her mouth and nose were injured, and various bruises and scratches were about her face and mouth.

When the victim was questioned closely about the glove she answered that she should have said just a dark glove that she was not sure about the color.

John James Sewell, who was thirty-one years old and a son of the victim Mrs. Vivian Sewell was in the home of his mother the night of October 25, 1969. About 4 A.M. he was awakened by noise and disturbance. He got out of bed, walked down the hall and saw his mother sitting on her bed, bleeding from her nostrils and in a pretty bad state of mind. She said somebody had tried to attack her. The Oak Ridge Police were called and Officers Whittenburg and Smartt came in about five minutes.

Lieutenant Lee Whittenburg of the Oak Ridge Police Department, cruising four blocks away received a radio dispatch at 4:07 A.M. and went immediately to the home of the victim at 108 Robin Lane. He found the victim Mrs. Vivian Sewell bleeding about the mouth and nose and learned she had been attacked. He found a black leather glove on the floor at the head of the bed, and in the bed clothing he found underbrush, dead-like twigs, leaves and the type of thing which indicated someone had been in the underbrush. That he preserved the glove in an envelope. With his hand-talkie radio he relayed back to the police station the meager description given him by Mrs. Sewell.

Lieutenant Whittenburg received a radio message that a suspect had been apprehended in the area in rear of Robin Lane at 109 Iris Circle. On going to that place Officer Whittenburg found Officer Smartt who had the defendant McDonald in custody.

The defendant was taken to the Oak Ridge jail and immediately confined in the cell area. Immediately after the defendant McDonald was confined in the cell Officer Whittenburg discovered the defendant gurgling and gagging and attempting to throw up something in the commode and stuffing something back in his pocket. The officer took from the defendant's pocket the remaining portion of a black leather glove. The defendant spit the other portion of the glove into the commode. The glove found beside the bed of the victim and the portion of the glove taken from the defendant in the cell at the jail after he had spit a portion of it into the commode were filed as exhibits and appear to be properly mated.

The left thumb and first two left fingers had been torn from the left glove that was taken from the defendant in the cell after he was arrested. The right glove was found by the head of the bed in the victim's bedroom immediately after the attack. These gloves were shown to the jury and properly filed as exhibits in the case. That they are mates can hardly be doubted.

Officer Smartt corroborated the testimony of Lieutenant Whittenburg and testified he got from Mrs. Sewell a meager description of the assailant, then began a search of the area. In 45 minutes to an hour he discovered the defendant behind an evergreen bush at 109 Iris Circle. Officer Harpe came up and they placed him under arrest, and patted him down and took him to police headquarters. The defendant had two screw-drivers and part of another one.

The defendant did not testify nor offer any proof.

██ The defendant's assignments of error 1, 2, and 5 attack the weight and sufficiency of the evidence and are considered together under the rule that the defendant is here under a presumption that he is guilty as found by the jury and approved by the trial court. The verdict of guilty approved by the Trial Judge, has accredit-

ed the testimony of the state's witnesses and established the state's theory of the case. The burden now is upon the defendant to show that the evidence preponderates against his guilt and in favor of his innocence and unless he does that we may not reverse a judgment on the facts. Holt v. State, 210 Tenn. 188, 357 S.W.2d 57; Gann v. State, 214 Tenn. 711, 383 S.W.2d 32.

■ By his third assignment the defendant contends the jury's verdict shows it was the result of prejudice, passion and caprice. This contention is without merit. We hold that the punishment being within limits fixed by the statute is not evidence of prejudice, passion and caprice.

By his fourth assignment of error the defendant says the trial court erred in overruling the motion for a directed verdict.

The bill of exceptions shows that when the state rested its case in chief, the defense counsel asked the jury be taken to the jury room which was done and then he made a motion that the jury be directed to return a verdict of not guilty because the State had failed to prove the venue. That there were references in the proof to Oak Ridge but no proof that it was in Anderson County, Tennessee.

The Trial Judge said that his notes showed the prosecution witness Vivian Sewell said she lived at 108 Robin Lane, Oak Ridge, Anderson County. The court reporter at the direction of the court said the witness was asked, "In Anderson County" and she replied, "Yes." The defense counsel further insisted the victim testified that she was attacked on the 26th day of October, 1969. The trial court held that time was not of the essence of the offense, that it would make no difference whether it was 25, 26 or 27 of October, 1969. That the preponderance of the evidence showed it was on the morning of October 25 as alleged in the indictment. The court asked if the defendant expected

to offer any proof in the case. The defense counsel said he would like to confer with the court and the District Attorney in that respect. The court reminded him the jury was out to say what he wanted to say. The defense counsel then stated to the court that the defendant indicated he did not desire to offer any testimony in his own behalf and that he would like for the court to advise him concerning his right to testify in order that he might fully understand it.

The Trial Judge replied:

"THE COURT: Well, now, this case has had quite a history. The defendant has been represented by you and later by you and Mr. Meredith, and at one time the case was set to be heard by the Court on a plea of guilty and the defendant changed his mind, and it was re-set to be heard before the jury on a plea of not guilty. The Court has conferred with the defendant before in the presence of his attorneys and the Attorney General, and the Court is of the opinion that your client is a very intelligent person, Mr. Fuller, and I think he understands whether he wishes to offer testimony or not. You do understand, Mr. McDonald, if you wish that you may have a right to testify in this case?

MR. McDONALD: (Nodded yes.)

THE COURT: Sir?

MR. McDONALD: Yes.

MR. FULLER: Very well, Your Honor.

THE COURT: I take it, then the defendant will offer no proof?

MR. MEREDITH: That's correct, Your Honor.

THE COURT: Very well."

■ Of course the matter of whether to direct a verdict of not guilty made at the close of the State's proof is in the discretion of the court. Here the defendant did not renew the motion after he had decided

---

---

not to testify, however we will consider the motion as if he had renewed it.

The contention that the venue has not been proven is untenable. The victim Mrs. Sewell testified the assault upon her was made in her home at 108 Robin Lane, Oak Ridge, Anderson County. We hold that the court can take judicial notice that Oak Ridge and Anderson County are located in the State of Tennessee.

The Acts of the General Assembly of Tennessee have declared by statute that Oak Ridge is located in Anderson County, Tennessee.

In Hite v. State, 17 Tenn. (9 Yerger) 357 the Court said:

"It is said no venue is proven. It is true that no witness proves that the offence was committed in Davidson County, but it is proven to have been committed at Haysborough, and the act of 1799, ch. 45, recognizes Haysborough as a town of Davidson County, which we think is sufficient to authorize the court to take notice of it as a place within the county, and is as satisfactory as if a witness had deposed to the fact."

In Moody v. State, 46 Tenn. (6 Coldwell) 299, the Supreme Court of Tennessee again said:

"It appears from the proof, the murder was perpetrated in the City of Memphis. Several of the witnesses prove that they live within the city limits, and that the killing was near their place of business, and on a particular street within the city limits. The whole volume of proof shows the murder was committed within the city; and we judicially know, the City of Memphis is situated within the fifth, thirteenth and fourteenth civil districts of the county of Shelby, and that those districts constitute a Criminal Judicial District, with a court having exclusive original jurisdiction of all crimes committed with the same. See sec. of the Code 119. This principle was settled in the case of Hite v. State, supra. In that case, the offense was proven to have been committed in Haysboro', an incorporated town, it being declared by public statute, to be in the County of Davidson."

Again in Hopson v. State, 201 Tenn. 337, 299 S.W.2d 11, the Court held:

"The Court can take judicial knowledge of the fact that Memphis is in Shelby County."

We find the evidence does not preponderate against the verdict of the jury and in favor of the defendant's innocence.

The assignments of error are overruled and the judgment is affirmed.

RUSSELL and DWYER, JJ., concur.