Leva Doris **HORNSBY**, Plaintiff in Error,

v.

**STATE** of Tennessee, Defendant in Error.

Court of Criminal Appeals of Tennessee.

Nov. 24, 1971.

Certiorari Denied by Supreme Court
April 3, 1972.

Pierce Winningham, Jr., Jackson, for plaintiff in error.

David M. Pack, Atty. Gen., Weldon B. White, Jr., Asst. Atty. Gen., Nashville, Whit LaFon, Asst. Dist. Atty. Gen., and James P. Diamond, Special Prosecutor, Jackson, for defendant in error.

## OPINION

DWYER, Judge.

This appeal is from a conviction of a wife for murder in the second degree for killing her husband, with punishment affixed by the jury at confinement for not less than ten years nor more than ten years in the State Penitentiary. From the judgment entered thereon this appeal has been duly and seasonably perfected, premised primarily on the theory that the killing was an act of self-defense.

▮ We have read this voluminous record with the knowledge of the following settled rules of law. In this court the defendant has lost her presumption of innocence by the jury verdict approved by the trial judge. She is under a presumption of guilt and has the burden to show that the evidence preponderates in favor of her innocence. See Haas v. State, Tenn.Cr.App., 455 S.W.2d 634. The trial court and the jury see and hear the witnesses face to face. They are the instruments of justice to determine the weight and credibility of the testimony of the witnesses. See Carroll v. State, 212 Tenn. 464, 472, 370 S.W. 2d 523. The defendant's plea and defense of self-defense presented a question for the exclusive determination of the jury. See Arterburn v. State, 216 Tenn. 240, 251, 391 S.W.2d 648. In determining the factual issues that we glean from our reading of this record it is unnecessary for us to discuss in detail the pros and cons of the evidence in order for us to arrive at our conclusions regarding the evidence in this record. See Hargrove v. State, 199 Tenn. 25, 28, 281 S.W.2d 692.

▮ This homicide occurred in the City of Jackson in the early morning hours of May 27, 1970. The deceased and the defendant were husband and wife, having occupied that station of life for over two years. A fair reading of this record indicates that both were addicted to alcohol, and that the defendant's wife had, through Alcoholics Anonymous, abstained from alcohol for the last two years prior to the fatal event. The deceased husband apparently was still an alcoholic until his death. They operated a grocery store in Jackson with living quarters in the rear where the event took place. The deceased was crippled, with an artificial leg below the knee, as a result of injuries sustained in a parachute jump during the Korean conflict. Other injuries sustained by the deceased at that time included a broken back, breaks in the other leg, and a partially paralyzed arm. The record is replete with numerous threats, made by the defendant, towards the deceased, of killing him because of his addiction to alcohol. There are other instances in the record where she had fired a pistol in the store and had fired a pistol outside the store. On the fatal night proof reflects that the sister of deceased called the defendant and told her deceased had been by the sister's house and would be late getting home. The defendant made threats and indicated anger in retorting that deceased was with some whore. The

fatal meeting was devoid of witnesses other than the defendant. In her testimony she related deceased came in around 2:00 a. m. drunk. She stated they argued for several hours, then the deceased went to sleep. When he awoke they argued about her fixing him breakfast resulting in his throwing bottles at her. With this she went into the store where she had taken a pistol from the bedroom to hide it from him. When he came into the store he saw the pistol in her hand, then went to the bedroom saying, ". . . I will get a gun too." She then related she followed him and after he closed the bedroom door she fired low through the door to shock him into some sense. She then pulled the door open, he lunged at her and she shot him. The bullet struck deceased in his chest and was fatal. When the officers arrived they related she told them that she shot deceased after he had choked and struck her in the head with a bottle. The officers examined her and found no marks upon her person. From our view we see no reason to disturb the jury's obvious, by its verdict, rejection of the plea of self-defense. See Arterburn v. State, *supra*. We further note from the defendant's testimony she related when deceased threw the bottles or hit her with the bottles she was angry. There is proof in this record she was mad about deceased not coming home earlier in the evening. In this State all homicides with nothing else shown are considered malicious. The burden is upon the State to raise the offense from second degree murder to first degree murder, and upon the defendant to reduce the degree. See Thomas v. State, 210 Tenn. 297, 299, 358 S.W.2d 315. We are further satisfied that the proof supports the verdict. The essential ingredient for the offense of murder in the second degree is malice. See Harper v. State, 206 Tenn. 509, 515, 334 S.W.2d 933. The defendant admits to shooting the deceased. Malice may be presumed from the use of a deadly weapon. The use of a deadly weapon is sufficient to sustain a verdict of murder in the second degree. We do not think the facts and circumstances have rebutted this. See Gann v. State, 214 Tenn. 711, 721, 383 S.W.2d 32; Smith v. State, 212 Tenn. 510, 514, 370 S. W.2d 543; McClain v. State, Tenn.Cr. App., 445 S.W.2d 942, 943. The assignments pertaining to the sufficiency of the evidence are overruled.

█ The defendant next contends the court erred in refusing to allow deceased's prior arrest record in evidence. The record reflects numerous arrests for drunkenness. The proof is uncontested as to this by the State and the defendant. In fact, there can be no question that the jury was as satisfied as we are that deceased was an alcoholic. The trial court held the arrest record to be cumulative. We agree and cannot perceive where defendant was prejudiced by this ruling. The assignment is overruled.

█ Defendant next contends the trial court erred in not submitting her tendered special requests. They are five in number, four going to the law of self-defense. We have examined the trial court's charge as found in the bill of exceptions. It is full and complete and adequately covers the law on self-defense. See Saunders v. State, 208 Tenn. 347, 361, 345 S.W.2d 899. The other charge pertains to the right of an officer to make an arrest, which was not an issue in this case. The assignment is accordingly overruled.

█ She next contends the court erred in refusing to allow counsel to read in his final argument to the jury from Morrison v. State, 212 Tenn. 633, 371 S. W.2d 441. The bill of exceptions reflects the court, in sustaining the objection, related it was not proper for the defendant to argue the facts of that case to the jury. With this we agree. The control of the argument is within the sound discretion of the trial judge and we will not interfere unless there is shown to have been an abuse thereof. We do not find such abuse. See Saunders v. State, *supra*. The assignment is overruled.

All assignments have been considered and found without merit. The judgment of the trial court is affirmed.

We commend court-appointed counsel for zealously representing indigent accused.

MITCHELL, J., concurs.

GALBREATH, Judge (dissenting).

Without belaboring the point, I would hold that the evidence in this case as summarized in the majority opinion would support conviction of no higher degree of homicide than voluntary manslaughter.

It seems to me that the deceased and the defendant were engaged in that form of mutual, albeit domestic, combat that resulted in a killing, upon sudden heat and adequate provocation that our law has always deemed manslaughter. See Hunt v. State, 202 Tenn. 227, 303 S.W.2d 740, and the many cases cited therein.

I must therefore respectfully dissent from the majority opinion.