**John Henry BROWN, Plaintiff-in-Error,**

**v.**

**STATE of Tennessee, Defendant-in-Error.**

Court of Criminal Appeals of Tennessee.

June 28, 1973.

Certiorari Denied by Supreme Court Nov. 19, 1973.

Joseph L. Lackey, Jr., and Leslie B. Enoch, II, Nashville, for plaintiff in error.

David M. Pack, Atty. Gen., W. Henry Haile, Asst. Atty. Gen., Thomas H. Shriver, Dist. Atty. Gen., Carl Douglas Thoresen, Asst. Dist. Atty. Gen., Nashville, for defendant in error.

MITCHELL, Judge.

## OPINION

The defendant John Henry Brown, represented by retained counsel has appealed his June 6, 1972 second degree murder jury conviction and sentence of twelve years from the Criminal Court of Davidson County, Tennessee, Honorable Raymond H. Leathers, Judge presiding.

According to the testimony of the State's witnesses, on October 2, 1971, the prosecution witness Ilean Polk and Walter White were living together as man and wife, without being lawfully married, at 24 Lincoln Avenue, Nashville, Tennessee. Ernest Polk a brother of Ilean was also living in the apartment with Walter and Ilean, and the defendant John Henry Brown who is White's cousin had also lived with them for about three months next before the killing.

On the day of the killing a friend of Ernest Polk came to the apartment to see Ernest and the defendant Brown rudely slammed the door in his face and told him Walter did not allow any men in there. Ilean reproved the defendant for slamming the door and the defendant said this was his cousin Walter's house, to which Ilean replied "What's Walter's is mine and what's mine is Walter's."

The defendant Brown then started throwing beer around on the floors and walls, and proposed that she go to bed with him and she let him know she did not go to bed with anybody but Walter. The defendant asked her not to tell his cousin Walter White, but she tried to tell Walter, and his only reply was that the defendant was blind and did not know what he was doing.

While Ilean's brother Ernest Polk was asleep on the couch the defendant went over to him and yelled at him, pulled him off the couch and called him vulgar names and said he didn't have no business there, and said "You don't pay no rent here." Ernest replied that this was his sister's house.

The defendant had an argument or quarrel with Ilean. Polk tried to talk to the defendant and cautioned him not to bother his sister Ilean and said "if you want to bother somebody, bother me." The defendant then jumped up from where he was sitting and opened a straight razor and cut Ernest Polk several times. Ilean Polk tried to restrain him and he cut her, and also cut Mrs. Elizabeth Wilson who was trying to subdue the defendant.

Ilean Polk said the defendant killed her brother Ernest because she would not go to bed with the defendant.

Mrs. Elizabeth Wilson corroborated the testimony of Mrs. Ilean Polk. Mrs. Wilson testified the defendant was blind, and after the cutting he ran off the porch and up the street and turned through an alley.

Dr. Michael A. Petrone, Medical Examiner testified:

"A. The body showed about four lacerations, that is, cuts. Located one right in the middle of the abdomen. He had one small one on his . . . the left side of his chest approximately here. Another one rather long one on his left arm, and one on his left wrist approximately here, and finally he had one penetrating stab wound just in the

lower left chest in the front. This was considered to be the fatal one.

Q. Doctor, do you have an opinion based on your expertise and medical certainty as to the cause of death of Ernest Lee Polk?

A. Yes. I concluded that he had died from massive pulmonary hemorrhage to the chest and lungs.

Q. Doctor, based on your examination of the wounds, which would have caused that?

A. The only wound that would have probably been fatal would have been this stab wound. The others would have been superficial to have been fatal.

Q. And the wound in you opinion that you said was fatal was right here in the middle part of his chest?

A. No, sir. That was only a laceration.

Q. All right.

A. This was the long chest wound itself penetrating into the chest cavity."

Dr. Michael A. Petrone said it was possible the wounds could have been inflicted with a knife or a straight razor.

John Henry Brown, the defendant denied that he killed Ernest Polk. He testified he was 50 years old. That he had been blind since 1966. That one eye has been removed and he can only see a little light through the other eye, but no movement or objects. The defendant denied he threw any beer or cursed anyone and denied Polk was asleep on the couch. He testified he only stayed at the apartment when Walter was out of town because Mrs. Polk was frightened and at Walter's request he stayed there with her. That he was there on the night of October 2, 1971. That Walter had told him "Don't let anybody in the door." That about 11:00 P.M.

a man knocked on the door. That no one knew him so Brown told him he couldn't come in. We quote a part of the defendant's testimony from the bill of exceptions:

" . . . so I come on back in there and sat down at the table, and this girl, Betty, told me, 'You old blind s. o. b. you, why don't you go somewhere and sit down.' (Crying). So, I told her, I said, 'You ain't got nothing to do with it. You don't live here.' And so, about that time, her brother came off the street and he said, 'You d--n blind s. o. b.' he said, 'You're arguing with my sister.' Said, 'I'll kill you.' And then about that time I felt something crack on me. I grabbed something off the table and I just started jabbing."

The defendant testified either Mrs. Polk or Betty killed Ernest Polk for his insurance. That he had never made any personal advances toward Mrs. Polk.

The defendant said he felt something cut him and he felt something on the table and he grabbed it and started jabbing. Then Mrs. Polk said "G----mn you done killed my brother." "I'm going to kill you."

That the defendant laid the object back on the table and walked out on the porch. That Betty said "The s. o. b. is blind." "Why don't you walk up behind him and knock the hell out of him with a G----mn shovel or something." Then the defendant started walking and a boy named Burton took him to his aunt's house.

He testified that he could not go anywhere unless someone took him. That he was cut on the stomach and stabbed up under the arm. The defendant then showed his scars to the jury, but said he did not receive any medical attention.

The defendant admitted he had served time in the penitentiary, for 2nd degree burglary in 1941, and in 1947 he was convicted of house breaking and larceny, and in 1959 was convicted of 2nd degree burglary on 6 cases.

Harley H. Simer, testified on behalf of the defendant. That he is Hospital Superintendent at the Tennessee State Prison. That in 1967 the right eye of the defendant was removed and he received an artificial eye. And that the vision in his left eye was very, very poor.

That Dr. John Smith who examined the defendant fololwing his operation noted that "In my opinion no prescription will benefit this man and he has no salvable vision."

On cross-examination Mr. Simer testified the defendant had poor projection. That he could see an object but could not determine the depth of it. That he had glaucoma.

Mrs. Mona Hayes, testifying on behalf of the defendant said she is an employee of the State Department of Public Welfare. That she was Mr. Brown's case worker. That Mr. Brown received aid to the blind from May 1969 to February 1972. That the aid was cut off when he returned to the State Penitentiary.

Herod Stanton, testifying for the defendant said he lived at LaSiesta Motel on Murfreesboro Road in Nashville on October 1. That he was walking up Wharf Avenue going east. It was after midnight, close to 1:00 A.M. That he saw a man across the street hollering for help. That the defendant told him he had been fighting and he wanted to go down to Miss Thelma Davis' house, so he took him there. The witness said to his knowledge the refendant is fully blind.

On cross-examination Mr. Stanton said the defendant said something about a wound but he did not see it. That he saw no blood on his shirt, but that it was dark.

James Finnell, testifying for the defendant said he was a brother to John Brown. That the morning of the next day (after the fight) Mr. Finnell's cousin brought John Henry to his house. That he saw a cut on John Henry's stomach. That when he asked how he got it the defendant said they had tried to gang him over at his cousin's house.

That the defendant said he thought he had killed a man.

On cross-examination he said the defendant's cuts were not bad enough for medical attention. That he had a little blood on his tee shirt.

George William Patton, testified that he was an employee of Universal Tire and that he was on his way home October 2, 1971. That he was intoxicated so he needed a ride home. That he stopped at Thelma Davis' house. That he saw John Henry Brown, the defendant, laying on the couch and his shirt was pulled up. That he looked like he had a little scratch on him but that he didn't look hurt very bad.

On cross-examination he said that the defendant did not mention a fight or how he got the cut.

Walter Rogers White, testified on behalf of the defendant that he lived at Apartment 4, 24 Lincoln Street, with Ilean Polk and her brother Ernest and John Henry Brown, who was staying there part-time. That he had asked John Henry to stay with Ilean so she would not be afraid. That he knew nothing about John Henry making passes toward Ilean. That Mr. Polk and the defendant argued several times. That Polk cursed John and called him "blind" once or twice. That he never saw him with a straight razor, that most of the time he shaved with an electric razor. That the defendant never tried to bother Mr. Polk.

That John had told him that "they ganged up on him." The defendant said he had killed a man, that he killed Ernest Polk.

Mr. White said he saw blood on John Henry but he thought it was the deceased's blood.

Elizabeth Wilson testified in rebuttal that she had at no time ever called the defendant a blind s.o.b. That she had only seen him twice.

## ASSIGNMENTS OF ERROR

The defendant has made the following assignments of error:

1. There was no evidence to support the verdict of second degree murder.

2. The verdict of the jury is contrary to the weight of the evidence.

3. The verdict of the jury is contrary to the law.

These three assignments are related, they challenge the weight, legality and sufficiency of the evidence and will be considered together.

The rule which we must abide by is that this Court will not reverse a criminal case on the facts unless it is shown that the evidence preponderates against the verdict and in favor of the innocence of the defendant. Anderson v. State, 207 Tenn. 486, 341 S.W.2d 385; Mahon v. State, 127 Tenn. 535, 156 S.W. 458; Turner v. State, 188 Tenn. 312, 219 S.W.2d 188; Batey v. State, 191 Tenn. 592, 235 S.W.2d 591.

▇ The verdict of guilty approved by the trial court accredited the testimony of the witnesses for the State, and established their credibility, Ivy v. State, 197 Tenn. 650, 277 S.W.2d 363, which displaced the presumption of innocence, raised a presumption of guilt and put on the accused the burden of showing the evidence preponderates against the verdict and in favor of his innocence. Ivy v. State, supra; Batey v. State, supra; Turner v. State, supra.

The case of State v. Grace, 493 S.W.2d 474, decided April 16, 1973, was a case where the Tennessee Court of Criminal Appeals had reversed and remanded the case on the facts. On Certiorari the Supreme Court of Tennessee reversed the Court of Criminal Appeals and affirmed the judgment of the trial court and said:

"Neither this Court, nor the Court of Criminal Appeals, is free to re-evaluate the evidence as it pleases. A guilty verdict by the jury, approved by the trial judge, accredits the testimony of the witnesses for the State and resolves all conflicts in favor of the theory of the State. A verdict against the defendant removes the presumption of innocence and raises a presumption of guilt upon appeal. The defendant has the burden upon appeal of showing that the evidence preponderates against the verdict in favor of his innocence."

The defendant John Henry Brown is a blind man. This killing occurred in the crowded apartment of Walter White who is a cousin of the defendant Brown. White and the State's witness Ilean Polk were living together in adultery. The defendant Brown and the deceased Ernest Polk, who was a brother of Ilean Polk, were also living in the apartment with them. Walter White was not present when Ernest Polk was killed. There was much beer drinking engaged in on that occasion.

It was in such unsavory surroundings that Ernest Polk was killed. The State's witnesses say the defendant Brown without any provocation or just cause pulled Ernest Polk off the couch and in a struggle deadly wounds were inflicted upon Polk. Ilean Polk said the defendant cut Polk with a straight razor. Mrs. Wilson who tried to interfere was also cut but she did not know what kind of instrument cut her. The defendant Brown told his cousin Walter White that he killed Ernest Polk.

With much force able defense counsel has urged upon us that second degree murder is not sustained by the proof. He contends that the malice necessary to support second degree murder is lacking and contends that under the authority of Hunt v. State, 202 Tenn. 227, 303 S.W.2d 740 the defendant cannot be guilty of any degree of homicide above voluntary manslaughter.

In Hunt v. State, supra, the Supreme Court found that the deceased and his brother were the originators of the fight

and attack. Here in the case at bar the witnesses said the defendant started the trouble by pulling the sleeping Ernest Polk off of the couch and said "he don't pay no rent" or words of like import. Moreover the State's witnesses said the deceased did not have any weapon and that he had not done anything to the defendant. But had told the defendant not to bother deceased's sister and if he wanted to bother anybody to bother him.

In Gann v. State, 214 Tenn. 711, 383 S. W.2d 32, the Court said:

"The law in Tennessee is that all homicide is presumed to be malicious, in the absence of evidence which would rebut the implied presumption. Coffee v. State, 11 Tenn. 283, 24 Am.Dec. 570 (1832); Witt v. State, 46 Tenn. 5 (1868); Gray v. State, 63 Tenn. 331 (1874); Harper v. State, 206 Tenn. 509, 334 S.W.2d 933 (1960).

Likewise, if a weapon is handled in a manner so as to make the killing a natural or probable result of such conduct, malice will be presumed from the use of the said weapon. Lewis v. State, 202 Tenn. 328, 304 S.W.2d 322 (1957); Nance v. State, 210 Tenn. 328, 358 S.W. 2d 327 (1962). Thus, the proof of the use of a deadly weapon is sufficient to sustain a charge of second degree murder unless it is rebutted by other facts and circumstances. Bostick v. State, 210 Tenn. 620, 360 S.W.2d 472 (1962); Smith v. State, 212 Tenn. 510, 370 S.W. 2d 543 (1963)."

\* \* \* \* \* \*

"We have considered the case of Hunt v. State, 202 Tenn. 227, 303 S.W.2d 740 (1956), wherein this Court reduced a second degree conviction to voluntary manslaughter on the grounds that mutual combat took place among the defendants and deceased person. However, we are satisfied that this case is distinguishable since in the Hunt case the defendant did not originate the fight, whereas in the case at bar defendant actively provoked

the incident which resulted in the death of Frank Richardson."

 We are unable to find that the evidence preponderates against the verdict and finding of the jury.

The assignments of error are overruled and the judgment is affirmed.

O'BRIEN and OLIVER, JJ., concur.