IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE

AT KNOXVILLE

JANUARY 1998 SESSION



FILED

July 9, 1998

Cecil Crowson, Jr.
Appellate Court Clerk

| | | |
|---|---|---|
| BILLY JOE BOURFF | ) | NO. 03C01-9705-CR-00189 |
| Appellant | ) ) | CAMPBELL COUNTY |
| v. | ) ) | HON. LEE ASBURY |
| STATE OF TENNESSEE | ) ) | (Post Conviction) |
| Appellee | ) ) ) | |

For the Appellant:

Douglas A. Trant,
900 S. Gay Street
Suite 1502
Knoxville, TN. 37902
(on post conviction)

For the Appellee:

John Knox Walkup
Attorney General & Reporter

Marvin E. Clements, Jr.
Assistant Attorney General
425 Fifth Avenue North
2d Floor, Cordell Hull Building
Nashville, TN. 37243-0493

William Paul Phillips
District Attorney General

Michael O. Ripley
Assistant District Attorney
P.O. Box 323
Jacksboro, TN. 37757

OPINION FILED:_____

AFFIRMED

WILLIAM M. BARKER, JUDGE

OPINION

The appellant, Billy Joe Bourff, appeals as of right the Campbell County Criminal Court's dismissal of his petition for post-conviction relief. We affirm the judgment of the trial court.

In 1991, the appellant was convicted by a jury of first degree murder and was sentenced to life in prison. Appellant's conviction and sentence were affirmed by this Court on direct appeal. See State v. Billy Joe Bourff, No. 03C01-9305-CR-00162 (Tenn. Crim. App. at Knoxville, June 23, 1994), *perm. app. denied* (Tenn. May 8, 1995)(concurring in results only).

The facts of appellant's case were summarized in the direct appeal as follows:

> On July 17, 1990, the appellant, accompanied by his father-in-law, Neal Perry, and his brother-in-law, Charles Perry, went to Zen's Tavern to shoot pool. Also present in the tavern was the victim, Leroy Baird. According to the state's witnesses, the appellant arrived about 10:15 p.m. and played pool with his companions. Mr. Baird was seated at the bar eating beef stew and cornbread. The appellant spilled Mr. Baird's stew on the counter and Mr. Baird moved down a couple of stools. Witnesses testified that words were exchanged between the appellant and Mr. Baird, but that Mr. Baird apparently did not consider it a serious matter.
>
> The appellant immediately left the tavern and returned shortly with his pistol, which he was carrying behind his back. He swung the gun around in front of him, telling Zen Hicks, the owner of the tavern, that he wanted to show him something. In so doing he pointed the gun directly at Mr. Baird. At that time Mr. Hicks told the appellant to leave and he did so. About a minute later Mr. Baird got up and walked out the door of the tavern. At that time one shot was fired by the appellant into Mr. Baird's chest. The bullet passed through the "conduction pathway" of the heart causing a condition the pathologist called "instant wipe-out" of the function of the human heart and Mr. Baird died immediately. According to the appellant's proof, the appellant was feeding Mr. Baird the soup when he spilled some. Mr. Baird accused him of spilling the soup on purpose and words were exchanged between the appellant and the victim. The appellant and his witnesses said that Mr. Baird was pulling out a knife inside the tavern and that when he came outside, he was attacking the appellant with the knife. Therefore, the appellant shot him to keep from being cut. Although the appellant's father-in-law and brother-in-law said they saw the knife inside the tavern, the appellant testified that he never saw the knife until [the victim] came out "cussing and raging."
>
> An open pocket knife was found about one and one-half inches above the victim's head. In addition, he had a pack of cigarettes in his hand and a cigarette between his fingers. The shot was fired from a

2

distance of less than forty-eight inches from the surface of the victim's shirt.

See id. *slip op.* at 1.

On February 8, 1996, the appellant filed a petition for post-conviction relief alleging that the prosecution withheld exculpatory evidence at trial in violation of Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), and that his trial counsel was ineffective in failing to discover exculpatory evidence and in failing to request a jury instruction on mutual combat. Appellant had the burden of proving those allegations by clear and convincing evidence. See Tenn. Code Ann. § 40-30-210(f) (Supp. 1996).

The trial court conducted an evidentiary hearing and dismissed appellant's petition upon finding that the information withheld by the prosecution was not material under Brady and that appellant's trial counsel provided effective and competent assistance. We affirm the trial court's findings.

## I.

The appellant first contends that the prosecution withheld exculpatory evidence at trial in violation of Brady v. Maryland. This issue is without merit.

At the evidentiary hearing, the appellant introduced documents marked as exhibits one through three to demonstrate a Brady violation. Exhibits one and two are jail intake records of the victim, Leroy Baird, dated from 1983 until his death in 1990. The records reflect that Mr. Baird was arrested fourteen (14) times for various criminal offenses including eight charges of public drunkenness, six charges of driving on a revoked license, five charges of driving under the influence of an intoxicant (D.U.I.), two charges of resisting arrest, and two charges of possession of a controlled substance. In six of the fourteen arrests, Mr. Baird was in possession of a knife.

Exhibit three is a list of Mr. Baird's convictions in the General Sessions Court of Campbell County. The records show that Mr. Baird was convicted of D.U.I. and driving without a license in 1988, and public drunkenness in four separate cases, with

3

one case in 1989, also including a conviction of resisting arrest[1] and possession of marijuana. Additionally, he was indicted on two subsequent charges of D.U.I. and driving without a license; however, those charges were dismissed after his death in 1990.

The appellant contends that he could have used that information, specifically the records of public drunkenness and resisting arrest, to show that Mr. Baird had a propensity to drink and become violent when intoxicated from alcohol. He argues that the information would have supported his theory that Mr. Baird was the first aggressor who attacked him with a knife.

The appellant relies upon the landmark case of Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), to assert that the State suppressed the information in violation of due process. In Brady, the United States Supreme Court held that the prosecution has a constitutional duty to furnish the defendant with any exculpatory evidence concerning the defendant's guilt or innocence and possible punishment. See 373 U.S. at 86-87, 83 S.Ct. at 1196-97.

To establish a violation under Brady, the defendant must prove by a preponderance of the evidence that: (1) he requested the information (unless the evidence is obviously exculpatory, in which case the State has a duty to release the evidence whether requested or not); (2) the State suppressed the evidence at trial; (3) the evidence was favorable to the defendant; and (4) the evidence was material. See United State v. Bagley, 473 U.S. 667, 674-76, 105 S.Ct. 3375, 3379-80, 87 L.Ed.2d 481 (1985); State v. Edgin, 902 S.W.2d 387, 389-390 (Tenn. 1995).

---

[1]The 1989 conviction for resisting arrest arose from an incident in which Mr. Baird was arrested for public drunkenness. The conviction record indicates that Mr. Baird kicked a police officer and had to be forcibly detained after the officer cited him for public drunkenness.

4

Evidence is material "if there is a reasonable probability[2] that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." See Kyles v. Whitley, 514 U.S. 419, 115 S.Ct. 1555, 1566, 131 L.Ed.2d 490 (1995). Additionally, our state supreme court has held that when there has been a general request or no request for Brady information, the undisclosed evidence is material if it "creates a reasonable doubt that did not otherwise exist." See State v. Edgin, 902 S.W.2d 387, 389 (Tenn. 1995) (quoting United States v. Agurs, 427 U.S. 97, 112, 96 S.Ct. 2392, 2402, 49 L.Ed.2d 342 (1976)).

In appellant's case, his trial counsel filed a pre-trial request for any information that might constitute Brady evidence. Although the State concedes that it never disclosed the information in exhibits one through three, the State argues that the evidence is not material under Brady. We agree.

The record reflects that the appellant shot Mr. Baird at close range in the parking lot of Zen's Tavern. The appellant had returned to the tavern with his pistol after an earlier altercation with Mr. Baird inside the bar. At trial, the appellant presented evidence through eyewitness testimony that Mr. Baird attacked him with a knife moments before the shooting. This Court reviewed that evidence in the direct appeal and concluded that there was overwhelming proof from which a rationale trier of fact could reject the theory of self-defense and convict the appellant of first degree murder. See Bourff, *slip op.* at 2.

The appellant, nevertheless, argues that the information in exhibits one, two, and three would have strengthened his theory of self-defense. We find, however, that even if the information were admissible to show Mr. Baird's criminal history, particularly his alcohol related offenses, it has little probative value as to appellant's guilt or innocence in the present case.

---

[2]The existence of a "reasonable probability" centers around whether the court has confidence in the verdict of the case despite non-disclosure of the evidence. See Bagley, 473 U.S. at 678, 105 S.Ct. at 3381. The court must view the suppressed evidence collectively in the context of the entire record to determine whether the evidence is material. See State v. Edgin, 902 S.W.2d 387, 389 (Tenn. 1995) (citing United States v. Agurs, 427 U.S. 97, 112-13, 96 S.Ct. 2392, 2402, 49 L.Ed.2d 342 (1976)).

The jail intake reports reflect that Mr. Baird had been arrested multiple times for alcohol related offenses. Although the records show that Mr. Baird possessed a knife during six of his fourteen arrests, and that he was cited twice for resisting arrest, the evidence carries little probative value when weighed against eyewitness testimony from the scene of the shooting. Moreover, we note that Mr. Baird's convictions in the general sessions court are a matter of public record and were not in the exclusive control of the State. Therefore, the State's failure to disclose the conviction records was not a Brady violation. See State v. Edgin, 902 S.W.2d at 389.

In the context of the entire record, the information in exhibits one through three would not have created a reasonable doubt concerning whether the appellant committed first degree murder. We are confident that the verdict in this case is correct and conclude that the information was not material within the meaning of Brady.

## II.

The appellant next contends that he received ineffective assistance of counsel by his trial counsel's failure to obtain exculpatory evidence and to request a jury instruction on mutual combat. This issue is without merit.

To prevail on a claim of ineffective assistance of counsel in this proceeding, the appellant must show by clear and convincing evidence[3] that the advice or services provided by his counsel fell below the range of competence demanded of attorneys in criminal cases. See Baxter v. Rose, 523 S.W.2d 930, 936 (Tenn. 1975). Furthermore, he must demonstrate prejudice by proving that, but for counsel's incompetence, the result of his trial would have been different. See Strickland v. Washington, 466 U.S. 668, 687-88, 692, 694, 104 S.Ct. 2052, 2064, 2067-68, 80 L.Ed. 674 (1984); Best v. State, 708 S.W.2d 421, 422 (Tenn. Crim. App. 1985).[4]

---

[3]Tenn. Code Ann. § 40-30-210(f) (Supp. 1996).

[4]The Strickland standard has been applied to the right to counsel under Article I, Section 9 of the Tennessee Constitution. See State v. Melson, 772 S.W.2d 417, 419 n.2 (Tenn. 1989), *cert. denied*, 493 U.S. 874 (1989).

6

The appellant first argues that his trial counsel failed to discover alleged exculpatory evidence. He contends that if the State did not suppress the information in exhibits one through three, then his counsel was ineffective in failing to obtain it.

Evidence at the post-conviction hearing consisted of appellant's testimony and the testimony of his trial counsel. Appellant's counsel testified that he conducted a pre-trial investigation which included interviews with the appellant, his family, and officers at the Campbell County Sheriff's Department. The record also reflects that counsel made discovery motions before trial, including a request for any information that might be exculpatory of the appellant. From that investigation, appellant's counsel stated that he learned about the victim's frequent consumption of alcohol. However, he testified that he did not know about the victim's criminal history until after trial.

Based upon information obtained from the appellant and other eyewitnesses, appellant's counsel established a case on the theory of self-defense. Both the appellant and his counsel testified that they pursued that defense in light of evidence that the victim approached appellant with a knife before the shooting. The trial court reviewed the testimony and found nothing in counsel's investigations that rose to the level of ineffective assistance. That decision is conclusive in this proceeding and will not be overturned unless the evidence preponderates against the judgment. See State v. Buford, 666 S.W.2d 473, 475 (Tenn. Crim. App. 1983), *perm. app. denied* (Tenn. 1984). From our review of the record, we affirm the trial court's finding and conclude that appellant's counsel conducted a thorough investigation of the case.

The appellant also alleges that his counsel was deficient in failing to request a jury instruction on mutual combat.[5] The record reflects that appellant's counsel never discussed mutual combat nor requested a jury instruction on that defense at trial.

_____

[5]When a homicide results from mutual combat or the excitement and heat of passion therefrom, the criminal offense is voluntary manslaughter. See Hunt v. State, 303 S.W.2d 740, 742 (Tenn. 1957) (citing 40 C.J.S. *Homicide* § 48(b), p.912). "There must be a mutual intention to fight, and, it has been held, deadly or dangerous weapons must be used." See id.

However, the appellant admitted that the defense strategy from the beginning was to pursue a theory of self-defense. Counsel testified that the self-defense theory was based upon appellant's version of the events preceding the shooting. The appellant told his counsel that there was no mutual fight between himself and the victim, but instead, the victim followed him outside the tavern and attacked him with a knife. The appellant further stated that his only fight with the victim was the brief exchange of words inside the bar.

Counsel's decision to pursue a theory of self-defense at trial must be reviewed with deference and from the counsel's perspective at that time. See Strickland, 466 U.S. at 689, 104 S.Ct. at 2065; Hellard v. State, 629 S.W.2d 4, 9 (Tenn. 1982). Every effort is made to avoid judging counsel's performance from hindsight; however, we must ensure that the appellant was afforded reasonably effective and competent assistance at trial. See Hellard, 629 S.W.2d at 9.

In that respect, we acknowledge that appellant's counsel investigated the case and formulated a defense strategy based upon the facts and circumstances surrounding the shooting. The appellant's position from the first meeting with his counsel was that he shot the victim only to protect himself from the alleged knife attack. The record, including appellant's own testimony, reflects that there was no mutual fight between appellant and the victim at the time of the shooting.

From our review, even if the evidence somehow warranted a jury charge on mutual combat, defense counsel's failure to request it does not rise to the level of ineffective assistance. We conclude that the tactical decisions and services provided by appellant's counsel were well within the standard demanded of attorneys in criminal cases. Appellant's contention is without merit.

Based upon the foregoing, the judgment of the trial court is affirmed.

_____
WILLIAM M. BARKER, JUDGE

8

CONCUR:

_____
JOSEPH M. TIPTON, JUDGE


_____
CURWOOD WITT, JUDGE

9

IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE

AT KNOXVILLE

JANUARY 1998 SESSION

| | | |
|---|---|---|
| BILLY JOE BOURFF | ) | |
| | ) | NO. 03C01-9705-CR-00189 |
| Appellant | ) | |
| | ) | Campbell County No. 8815 |
| v. | ) | |
| | ) | HON. LEE ASBURY |
| STATE OF TENNESSEE | ) | |
| | ) | (Post Conviction) |
| Appellee | ) | |
| | ) | Affirmed |
| | ) | |

## JUDGMENT

Came the appellant, Billy Joe Bourff, by and through counsel, and also came the attorney general on behalf of the State, and this case was heard on the record on appeal from the Criminal Court of Campbell County; and in consideration thereof, this Court is of the opinion that there is no error in the judgment of the trial court.

In accordance with the opinion filed herein, it is, therefore, ordered and adjudged that the judgment of the trial court is affirmed and the case is remanded to the Criminal Court of Campbell County for the execution of the judgment of that court and for the collection of the costs accrued below.

Costs of appeal will paid into this Court by the appellant for which execution shall issue if necessary.

William M. Barker, Judge
Joseph M. Tipton, Judge
Curwood Witt, Judge