**John D. WITHERS, Plaintiff-in-Error,**

v.

**STATE of Tennessee, Defendant-in-Error.**

Court of Criminal Appeals of Tennessee.

Jan. 24, 1975.

Certiorari Denied by Supreme Court
April 7, 1975.

**366**

Walker Gwinn, John C. Hough and Edward G. Draper, Asst. Public Defenders, Edward G. Thompson, Memphis, for plaintiff-in-error.

Milton P. Rice, Atty. Gen., Robert H. Roberts, Asst. Atty. Gen., Nashville, Phil M. Canale, Jr., Dist. Atty. Gen., Ewell C. Richardson and Don F. Young, Asst. Dist. Attys. Gen., Memphis, for defendant-in-error.

## OPINION

MITCHELL, Judge.

The defendant John D. Withers was indigent and represented at the trial by Assistant Public Defenders Honorable John C. Hough and Honorable Edward G. Draper. On appeal the defendant was represented by the Shelby County Public Defender Honorable Walker Gwinn. The defendant was tried in two separate cases on two separate indictments, one charging rape, and the other charging robbery by the use of a deadly weapon, upon the same person on the same date. The two cases were consolidated for trial and on October 25, 1973, the defendant was convicted in the Criminal Court of Shelby County of rape with a 25 year sentence imposed, and simple robbery with a 5 year consecutive sentence imposed.

After the Trial Judge Honorable Perry H. Sellers heard and overruled the new trial motion the defendant appealed and assigned errors.

We here summarize the facts from testimony of the State's witnesses which was accepted by the jury.

The victim of this brutal assault, rape and robbery was Miss Sheila Langston age 23. She had completed two years in college and was at the time employed in respiratory therapy at Methodist Hospital in Memphis. Her working hours were from 7:00 A.M. to 3:00 P.M. Miss Langston arose early on February 6, 1972, and about 6:30 A.M., was walking from her rooming house alone to the hospital which was about three or four blocks. As she neared the hospital she had crossed the street and was walking in the parking lot toward the dormitory of the Methodist Hospital. A car turned in front of her and shined the lights in her face but she continued walking. A man jumped out of the car and attacked her and started beating her with a hard object. She tried to defend herself and ward off the blows, but with no success. He kept beating her and forced her into the front part of the car and told her to get on the floor board. Then the man got into the car and started driving.

Miss Langston had a small cylinder of sheriff's mace which she took from her pocket and tried to spray her abductor but it was not effective. The man took the mace from her and started beating her again. He drove the car about two blocks from the hospital and stopped.

He pulled her over on the driver's side, showed her a pistol that looked like a .22 caliber, black with white handles, and said he ought to kill her. He then opened the back door of the car, forced her into the back seat, pulled her pants down, compelled her to lay down and put her coat over her head. He forced her to put her legs up but she resisted and he started beating her again.

From the description she gave of what took place the defendant had unlawful carnal knowledge of her forcibly and against her will. Then the defendant suggested a loathsome perverted sex act which she refused to do.

The defendant got up and got out of the car and told her to get out. The defendant then searched in her purse but found no

money. He compelled her to give him $7.00 and before she could get out of the car he seized her arm and took her Timex skindivers black wrist watch. The dial of the watch was worn and there was a bad crack in the crystal. He warned her she had better not tell the police and as he drove off she got his car license number which she later gave to the police.

Two L.P.N. student nurses then drove up and took Miss Langston in their car to the hospital emergency room. Two policemen were already there to whom Miss Langston reported the rape and robbery. The nurses took her to a room where the police and a detective talked to her. She gave the police a full description of the defendant and his car and the license numbers. Then her brother came and talked to her.

The next day Miss Langston went to the police station and gave a statement. Miss Langston testified that during the attack and during this ordeal there were times when she got a good look at the man who raped and robbed her, particularly when they were fighting, then when he showed her the pistol and threatened her and when he was searching through her purse. Those instances she said the light was sufficient for her to get a good look at him.

That on March 18, 1972 she attended a line-up conducted by the police when she recognized and identified the defendant as the man who had committed these crimes against her.

Miss Langston in the Courtroom positively identified the defendant John Withers as the man who raped and robbed her.

The proof showed that the victim Miss Sheila Langston was a pure and chaste virgin prior to the attack made on her by the defendant.

Miss Langston identified her watch which was made an exhibit in the case. After the rape and robbery the watch was found in the possession of the defendant

John Withers. The proof showed the defendant told a friend that he got the watch from a woman he had a bust with meaning sexual relations.

Dr. George William Jenkins M.D., who was on duty in the emergency room at the hospital when Miss Langston was brought in treated her for lacerations about her head and face. He also found abrasions, mud and dirt on her legs and neck. There was bleeding at the opening of the vagina with blood in the vault with live sperm. From his examination Dr. Jenkins determined the man who committed the assault was infected with gonorrhea. Dr. Jenkins gave Miss Langston medication to guard against pregnancy and gonorrhea.

It was Dr. Jenkins' opinion that Miss Langston had never had sexual relations prior to the morning of the assault.

According to the testimony of Patrick L. Harper, 10 year veteran of the Memphis Police Department, in the early hours of February 6, 1972, he was at Methodist Hospital in Memphis. Miss Sheila Langston gave him information that the license number of the vehicle used in the assault was Tennessee T–23669. Harper recognized that this was an impossible number because of the County prefix. Logical deduction produced the correct number 1–Z3669.

Harper and his partner then followed up on this deduction and found that the license number was registered to one Rena Langston (No relation to the victim), who was a patient in Methodist Hospital on the day of the assault. The automobile was found at 1912 Lamar, Rena Langston's home address. A considerable quantity of blood was on the right front seat as reflected in the photograph exhibit 5.

Rena Langston testified that she left the automobile locked before entering the hospital, and she had in her possession the only two known sets of keys to her automobile. She had given no one permission to drive the automobile and it did not have

blood on the front seat when she last saw it prior to entering the hospital. The car was a Buick '64 or '65 which had a white top and tan body with light tan seat covers or upholstery.

At the time of his arrest on March 17, 1972, the defendant was seen to drop or throw down a screw driver and a bunch of keys which were recovered by the officers.

It developed that among those keys there were 8 that fit the ignition of the Buick and one key fit the door lock of the Rena Langston tan Buick with a white top, with blood on the front seat, which was identified by the victim Miss Langston as the car in which the crime was committed.

The defendant John D. Withers took the witness stand and testified in his own behalf. In his testimony the defendant admitted that he first told the officers he did not have, nor drop or throw down the screw driver and the keys, but he later admitted he had the screw driver with which he was working on his car. But the defendant steadfastly denied having or dropping the bunch of car keys.

He denied assaulting or robbing Sheila Langston. That he had never seen Miss Langston, that he was at home in bed. He further said that he was 26 years old, 5 feet 11½ inches tall, and that he had never had venereal disease. He said he stole the Timex watch out of a parked car at John Gaston Hospital. He denied he said he had a bust out with a lady from whom he got the watch.

The defendant made the following assignments of error:

## ASSIGNMENTS OF ERROR

1. There is no evidence to support the verdict.

2. The verdict of the jury is contrary to the law and the evidence.

3. The evidence preponderates against the verdict of the jury and in favor of the defendant.

4. The Court erred in overruling the objection of the defendant to the admission of pictures of the victim, showing how she was beaten. These were color photographs and were liable to inflame the jury and had no probative value.

5. The Court erred in overruling the defendant's objection to the line-up, which was unfair.

6. The Court erred in allowing into evidence the line-up identification card signed by the prosecutrix, Sheila Langston, because this was in violation of the well settled rule that prior consistent statements, or "self-serving" statements are not admissible in evidence.

7. The Court erred in allowing into evidence the testimony of Sheila Langston as to the identification at the line-up and allowing as an exhibit the line-up identification card that she signed.

8. The defendant further states that the Court erred in allowing the verdict of the jury to stand when the evidence pointed to the fact that the defendant would have had to have gonorrhea at the time of the intercourse with the prosecutrix and the defendant's subsequent proof showed that there was no possibility of him having gonorrhea at this time.

9. Defendant would show that the arrest of the defendant was illegal and the Court erred in allowing into evidence any of the products of the arrest, such as the keys, screw driver and the sock.

10. The defendant avers that the Court erred in allowing into evidence the chain of keys found at the place where the defendant was arrested, when the chain of evidence was not proven as to the said keys.

11. The defendant avers that the Court erred in allowing the conviction for rob-

bery of five (5) years to stand when the robbery arose out of the same transaction and the same intent as the rape conviction for twenty-five (25) years, and further avers that the Court erred when it ran the robbery conviction consecutive with the rape conviction in that both were part of the same intent.

12. The Court further erred in allowing verdict to stand, when it was patently contrary to the evidence.

Assignments 1, 2, 3, 8, and 12, challenge the weight and sufficiency of the evidence and will be considered together.

The trial jurors are the judges of the weight and credibility of the testimony of the witnesses. It is their duty to reconcile conflicts in the testimony if they can do so consistent with reason and truth. But, if there are irreconcilable conflicts in the testimony the jurors are to say who and what is to be believed. In cases where the proof of the state and that of the defendant are diametrically opposed, as in the case at bar, the trial jurors are to decide which testimony they will accept and may reject that which they are unable to believe. Gann v. State, 214 Tenn. 711, 383 S.W.2d 32.

A verdict of guilty approved by the trial judge accredits the testimony of the State's witnesses and establishes the theory of the State.

We may not set aside a verdict on the facts unless the proof preponderates against the verdict and in favor of the innocence of the defendant. The defendant is here under a presumption that he is guilty as found by the jury and approved by the trial judge and the burden is on the defendant to show that the evidence preponderates against the verdict and in favor of his innocence. Webster v. State, 1 Tenn.Cr.App. 1, 425 S.W.2d 799; Shadden v. State, 2 Tenn.Cr.App. 450, 455 S.W.2d 164; Gann v. State, 214 Tenn. 711, 383 S. W.2d 32; Holt v. State, 210 Tenn. 188, 357 S.W.2d 57.

Whatever apparent discrepancies there may be in the testimony of the victim concerning the description of the defendant have been reconciled and decided by the jury verdict approved by the trial judge. As said by the Advocate General in his excellent brief such possible discrepancies are not sufficient to overcome the positive identification which the victim made of the defendant.

The defendant places much emphasis on the testimony of the doctor who determined by his examination of the victim that the man who committed the rape was infected with gonorrhea.

We think this theory loses much of its support when there was testimony that gonorrhea could be cured or cleared up in five days. Evidently, the trial jury was not impressed with the testimony of the girl friend of the defendant who said she was sleeping with the defendant and they were having sexual relations about three times a week and the testimony of the defendant's wife who also said she and the defendant were having sexual intercourse about three times a week and neither of them had contracted any venereal disease.

The defendant's assignment 4, that it was error to allow the district attorney to introduce color photographs showing Miss Langston's wounds on her head and face, is without merit.

We think the photographs more effectively portrayed the true condition of the victim after she had been brutally beaten by the defendant, than could the words of the doctor. There is no contention that the photographs did not show the true and actual condition of the victim. It is well settled that the admissibility of photographs is a matter to be determined by the trial judge in the exercise of sound discretion. Freshwater v. State, 2 Tenn.Cr.App. 314, 453 S.W.2d 446; Palmer v. State, 1 Tenn.Cr.App. 223, 435 S.W.2d 128.

We find no abuse of discretion here.

The 5th, 6th and 7th assignments of error complain of error by the trial court by allowing into evidence the line-up identification of the defendant. This allegation is based both on the line-up identification card signed by the prosecutrix as well as her testimony. Defendant contends that Miss Langston's testimony about her actions at the line-up and introduction of the line-up identification card amounted to an erroneous bolstering of Miss Langston's testimony. With this we do not agree.

We are unable to find any merit in these three assignments. In Blankenship v. State, 1 Tenn.Cr.App. 178, 432 S.W.2d 679, in affirming a conviction for armed robbery, in an opinion by Presiding Judge Mark A. Walker, we said:

"'We hold that the testimony of the prosecuting witness, concerning his previous identification of the defendant, was competent.'

In Gilbert v. State of California, 388 U.S. 263, 87 S.Ct. 1951, 18 L.Ed.2d 1178, footnote 3, the United States Supreme Court said:

'There is a split among the states concerning the admissibility of prior extrajudicial identifications, as independent evidence of identity, both by the witness and third parties present at the prior identification. See 71 A.L.R.2d 449. It has been held that the prior identification is hearsay, and, when admitted through the testimony of the identifier, is merely a prior consistent statement. The recent trend, however, is to admit the prior identification under the exception that admits as substantive evidence a prior communication by a witness who is available for cross-examination at trial. See 5 A.L.R.2d Later Case Service 1225–1228. That is the California rule. In People v. Gould, 54 Cal.2d 621, 626, 7 Cal. Rptr. 273, 275, 354 P.2d 865, 867, the Court said:

"Evidence of an extrajudicial identification is admissible, not only to corroborate an identification made at the trial (People v. Slobodion, 31 Cal.2d 555, 560, 191 P.2d 1) but as independent evidence of identity. Unlike other testimony that cannot be corroborated by proof of prior consistent statements unless it is first impeached * * * evidence of extrajudicial identification is admitted regardless of whether the testimonial identification is impeached, because the earlier identification has greater probative value than an identification made in the courtroom after the suggestions of others and the circumstances of the trial may have intervened to create a fancied recognition in the witness' mind * * *. The failure of the witness to repeat the extrajudicial identification in court does not destroy its probative value, for such failure may be explained by loss of memory or other circumstances. The extrajudicial identification tends to connect the defendant with the crime, and the principal danger of admitting hearsay evidence is not present since the witness is available at trial for cross-examination."'"

The defendant waived the right to an attorney at the line-up. No improper conduct was shown in the line-up procedure.

Assignment 9, is that the arrest was illegal and the bunch of automobile keys and screw driver were inadmissible. The defendant at the time of his arrest claimed to be the owner of a car which the officers found was registered in another's name. When the officers approached the defendant he attempted to rid himself of the automobile keys and the screw driver. The officers knew of many cases of mysterious burglary of cars in that area which could have been committed only by the use of keys. The officer said to the defendant "the car is not registered in your name, you've got these keys and screw driver, you're under arrest for investigation of auto theft." We think the detention of the

defendant was justified under the circumstances.

We hold the arrest and detention was supported by probable cause and was therefore lawful. Cupp v. Murphy, 412 U.S. 291, 93 S.Ct. 2000, 36 L.Ed.2d 900.

Assignment 10, is that the chain of evidence concerning the keys in question was not properly shown. There is no merit in this assignment. The proof shows the trial judge conducted a "jury out" investigation and found the chain of evidence fully established.

Moreover defense counsel at the trial then withdrew his objection.

Assignment 12, that the verdict was contrary to the evidence, was answered in our response to assignments 1, 2, 3, and 8 concerning the weight and sufficiency of the evidence.

 Assignment 11 is without merit. The testimony shows that the robbery occurred subsequent to the rape. The rape had already been committed prior to the commencement of the robbery. Its elements were separate and distinct from those necessary to constitute the offense of rape. Harris v. State, 206 Tenn. 276, 332 S.W.2d 675 (1960); Hayes v. State, 4 Tenn.Cr.App. 360, 470 S.W.2d 950 (1971).

These two offenses were committed by the defendant on the same occasion against the same victim. The facts out of which the two indictments grew are interrelated and some of the facts would be necessary in both cases. Therefore it was within the discretion of the Trial Court to consolidate the two cases for trial. Epstein v. State, 211 Tenn. 633, 366 S.W.2d 914; State ex rel. Gann v. Henderson, 221 Tenn. 209, 425 S.W.2d 616; 5 Wharton Criminal Law and Procedure Sec. 931.

The defendant contends that the robbery case arose out of the same transaction as the rape case and that the robbery sentence of five years should not be allowed to stand, that it was error to order the robbery sentence to be served consecutively to the sentence in the rape case. With this we cannot agree.

We think there were two separate and distinct convictions, rape and robbery which justified two separate sentences. We hold that the Trial Judge did not abuse his discretion in ordering the robbery sentence to be served consecutively to the rape sentence. Hayes v. State, supra, Harris v. State, supra.

The assignments of error are overruled and the judgment is affirmed.

We are grateful to zealous Court appointed counsel for representation of the defendant.

RUSSELL and DWYER, JJ., concur