IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs March 20, 2001

## STATE OF TENNESSEE v. JEREMY TAYLOR

**Appeal from the Circuit Court for Blount County**
**No. C-10033     D. Kelly Thomas, Jr., Judge**

---

**No. E2000-01724-CCA-R3-CD**
**April 10, 2001**

---

The defendant was indicted by a Blount County Grand Jury for casual exchange of a controlled substance, marijuana, and found guilty following a bench trial. Following a sentencing hearing, the trial court sentenced the defendant to eleven months and twenty-nine days in jail. As to the manner of service of the sentence, the first ninety days were ordered served in confinement with the option of serving the last thirty days in an inpatient drug abuse program. The balance of the sentence was ordered served on probation. In this appeal as of right, the defendant presents two issues for our review: (1) whether the evidence was sufficient to support his conviction; and (2) whether the manner of service of his sentence was appropriate. We affirm both the conviction and sentence.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

ALAN E. GLENN, J., delivered the opinion of the court, in which JERRY L. SMITH and JOE G. RILEY, JJ., joined.

Raymond Mack Garner, District Public Defender, and Shawn G. Graham, Assistant District Public Defender, for the appellant, Jeremy Taylor.

Paul G. Summers, Attorney General and Reporter; Peter M. Coughlan, Assistant Attorney General; Michael L. Glynn, District Attorney General; and John A. Bobo, Jr., Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

The defendant, Jeremy Taylor, was indicted by a Blount County Grand Jury for the casual exchange of a Schedule VI controlled substance, marijuana, a Class A misdemeanor. Following a bench trial, the defendant was found guilty as indicted and sentenced to eleven months and twenty-

nine days in jail.[1]  The trial court ordered the defendant to serve ninety days in confinement, with the option of serving the final thirty days in a substance abuse facility.  The balance of the sentence was ordered served on probation.  A fine of $250 was assessed.

In this appeal as of right, the defendant presents two issues for our review:

> I.  Whether the evidence was sufficient to support his conviction for casual exchange of marijuana; and
>
> II.  Whether the trial court properly sentenced him.

Finding no error, we affirm the judgment of the trial court.

### FACTS

The defendant in this case is a young man in his early twenties, within a few credit hours of graduating from the University of Tennessee with a Bachelor of Science Degree in chemistry, and with a steady job where he was, at the time of this offense, rising in the ranks of employment.  The defendant has smoked an average of five joints of marijuana a day since the age of sixteen.  The record on appeal, although lacking a transcript of the bench trial at which the defendant was found guilty of casual exchange of marijuana, includes the defendant's supplemental statement of the evidence.[2]  According to this supplemental statement and the record as a whole, on July 17, 1996, the defendant was living in a residence in Maryville with two roommates.  On that day, Officers Scott Johnson and Eric Gutridge, both working with the Blount Metro Narcotics Unit (BMNU), set up a drug purchase using a confidential informant who lived in the same neighborhood as the defendant and had smoked marijuana with him on at least one occasion.  The informant was given $150 to purchase one ounce of marijuana from the defendant and was outfitted with a radio transmitter so that Officers Johnson and Gutridge could listen to and record the transaction.

In the afternoon of July 17, on the first pass by the residence, the officers determined that the defendant was not at home, but as they were driving away, a vehicle that matched the description of the defendant's drove up.  The informant was then let out to go complete the purchase.  He testified that he went in the house and that the defendant only had half an ounce of marijuana for sale.  He purchased this amount for $70 and then proceeded to the prearranged meeting place where he turned over the marijuana and cash balance to the BMNU officers.  Tests conducted by the Tennessee Bureau of Investigation on the plant substance turned over by the informant showed it to be 12.6 grams of marijuana, or slightly less than half an ounce.

---

[1]We assume that a document signed by the trial court on April 27, 2000, and included in the record with the heading, "Order Accepting Plea of Guilty," for indictment number C-10033, casual exchange, is incorrect.

[2]The State in its brief acknowledges that a verbatim transcript of the bench trial does not exist but, apparently, agrees to treat the defendant's supplemental statement of the evidence as accurate.

A transcript of the tape-recorded conversation between the informant and the defendant was admitted as evidence at the bench trial of this cause. The following text sets out that conversation as transcribed and admitted as evidence, in its entirety:

16:40        C.I. [confidential informant] DEPARTS

17:32        C.I. ARRIVES

17:32        C.I.: JEREMY, YOU ARE A HARD MAN TO GET HOLD OF.

JEREMY: YEAH

C.I.: IS THAT ALL YOU'VE GOT?

JEREMY: NO, I'VE GOT ANOTHER 1/4

C.I.: I'M NEEDING ½ OUNCE OR OUNCE

JEREMY: PROBABLY A ½ OUNCE HERE

C.I.: WHAT DO YOU NEED OUT OF IT?

JEREMY: 70

DISCUSSION ABOUT TAYLOR MOVING TO PEA RIDGE AREA

17:33        C.I.: IS THAT PRETTY GOOD HERB?

JEREMY: YEAH

MORE TALK OF MOVING

C.I.: THAT'S A COOL BONG, PUFF THAT MAGIC DRAGON

C.I.: WHEN YOU GOING TO HAVE MORE?

JEREMY: I DON'T KNOW, WHENEVER I CAN GET THE FUCKING CHANCE TO GO GET IT.

C.I.: THINK YOU'LL HAVE ANYMORE TOMORROW?

JEREMY: I DOUBT IT.

17:34    C.I.: THAT'LL BE 70, SEE HERE, 20, 40, 60, 80. YOU GOT 10?

JEREMY: LET ME COUNT THAT

C.I.: IS THAT IT?

JEREMY: YEAH

C.I.: HOW MUCH FOR A WHOLE OUNCE?

JEREMY: $130

C.I.: THINK YOU CAN DO ONE TOMORROW EVENING?

JEREMY: I GOT TO WORK TOMORROW TALK ABOUT SCHOOL AND WORK

C.I.: I APPRECIATE IT.

17:36    C.I. DEPARTS

The defendant testified in his own defense and denied that he had ever sold marijuana to anyone and, further, testified that he had never seen the informant until the day of his trial in this cause, June 27, 2000.

## ANALYSIS

### Issue I.  Sufficiency of the Evidence

The defendant first contends that the evidence is insufficient to support his conviction for casual exchange of marijuana.  The defendant seeks to discredit the State's evidence by pointing out that no fingerprints were ever taken from the plastic bag containing the marijuana sold to the informant; neither of the officers listening to the transaction on July 17 from their remote location recognized the voice of the seller as that of the defendant; one of the defendant's roommates could have been driving his car that day; and his roommates also used marijuana, implying, without so alleging, that one of them could have sold the marijuana to the informant.  Essentially, the defendant

asserts that the informant lied about purchasing marijuana from him on July 17, and that he is not the person addressed as "Jeremy" by the informant in the conversation set out above. The State counters that the convicting evidence is sufficient. We agree.

When a defendant challenges the convicting evidence on appeal, the State is entitled to the strongest legitimate view of the evidence and all reasonable inferences that might be drawn from the evidence. See State v. Cabbage, 571 S.W.2d 832, 835 (Tenn. 1978). The credibility of the witnesses, the weight given their testimony, and the reconciliation of conflicts in the proof are matters entrusted exclusively to the trier of fact. See Byrge v. State, 575 S.W.2d 292, 295 (Tenn. Crim. App. 1978) (citing Withers v. State, 523 S.W.2d 364 (Tenn. Crim. App. 1975)). In a bench trial, the verdict of the trial judge is entitled to the same weight on appeal as that of a jury verdict. See State v. Horton, 880 S.W.2d 732, 734 (Tenn. Crim. App. 1994). In a criminal action, a conviction may be set aside only when the reviewing court finds that the "evidence is insufficient to support the findings by the trier of fact of guilt beyond a reasonable doubt." Tenn. R. App. P. 13(e); see also Jackson v. Virginia, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789, 61 L. Ed. 2d 560 (1979) (concluding that courts reviewing sufficiency of evidence must determine "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt"). Finally, the burden is on the defendant to show that the evidence is insufficient. See State v. Tuggle, 639 S.W.2d 913, 914 (Tenn. 1982).

Tennessee Code Annotated Section 39-17-418 provides the following, in pertinent part:

> **Simple possession or casual exchange. —** (a) It is an offense for a person to knowingly possess or casually exchange a controlled substance unless the substance was obtained directly from, or pursuant to, a valid prescription or order of a practitioner while acting in the course of professional practice.
>
> (b) It is an offense for a person to distribute a small amount of marijuana not in excess of one half (½) ounce (14.175 grams).

Id. § 39-17-418(a)-(b) (1997). The exchange of a controlled substance, including a transaction where money is exchanged for the controlled substance, is "casual" when it is without design. See State v. Helton, 507 S.W.2d 117, 120 (Tenn. 1974).

Here, there is no question concerning either the controlled nature or the amount of the plant substance sold to the confidential informant on July 17, 1996. The only question is one of identity. The defendant offered no alibi evidence or any credible challenge to the evidence recorded on tape. The trial court had the benefit of "see[ing] the witnesses face to face, hear[ing] their testimony and observ[ing] their demeanor on the stand." Bolin v. State, 405 S.W.2d 768, 771 (Tenn. 1966). The trial court believed the testimony of the informant, of Officers Johnson and Gutridge, and disbelieved the defendant's protestations of innocence. Furthermore, the recorded transaction between the

informant and the defendant was never credibly refuted and remains substantial proof of guilt. We conclude that there was sufficient evidence from which a rational trier of fact could have found the defendant guilty of selling 12.6 grams of marijuana to the informant. This issue is without merit.

## Issue II. Appropriateness of Sentence

The defendant contends, in his final issue, that the trial court erred by ordering that he serve part of his sentence in confinement rather than his entire sentence on probation.

When an accused challenges the length, range, or manner of service of a sentence, it is the duty of this court to conduct a *de novo* review on the record with a presumption that "the determinations made by the court from which the appeal is taken are correct." Tenn. Code Ann. § 40-35-401(d). This presumption is "conditioned upon the affirmative showing in the record that the trial court considered the sentencing principles and all relevant facts and circumstances." State v. Ashby, 823 S.W.2d 166, 169 (Tenn. 1991). In conducting a *de novo* review of a sentence, this court must consider (a) any evidence received at the trial and/or sentencing hearing, (b) the presentence report, (c) the principles of sentencing, (d) the arguments of counsel relative to sentencing alternatives, (e) the nature and characteristics of the offense, (f) any mitigating or enhancing factors, (g) any statements made by the accused in his own behalf, and (h) the accused's potential or lack of potential for rehabilitation or treatment. See Tenn. Code Ann. §§ 40-35-103 and -210; see also State v. Scott, 735 S.W.2d 825, 829 (Tenn. Crim. App. 1987).

The party challenging the sentences imposed by the trial court has the burden of establishing that the sentences are erroneous. See Tenn. Code Ann. § 40-35-401, Sentencing Commission Cmts.; see also Ashby, 823 S.W.2d at 169. In this case, the defendant has the burden of illustrating the sentence imposed by the trial court is erroneous.

The Tennessee Criminal Sentencing Reform Act of 1989, enacted to "promote justice," Tenn. Code Ann. § 40-35-102 (1997), provides that the sentence imposed upon an offender should be the "least severe measure necessary to achieve the purposes for which the sentence is imposed." Tenn. Code Ann. § 40-35-103(4) (1997). When the trial court determines the appropriate combination of sentencing alternatives to be imposed, it must consider the following:

> (1) The evidence, if any, received at the trial and the sentencing hearing;
>
> (2) The presentence report;
>
> (3) The principles of sentencing and arguments as to sentencing alternatives;
>
> (4) The nature and characteristics of the criminal conduct involved;

> (5) Evidence and information offered by the parties on the enhancement and mitigating factors in §§ 40-35-113 and 40-35-114; and
>
> (6) Any statement the defendant wishes to make in the defendant's own behalf about sentencing.

Id. § 40-35-210(b)(1)-(6). Our legislature has determined that sentences involving confinement should be based on a number of specific considerations:

> (A) Confinement is necessary to protect society by restraining a defendant who has a long history of criminal conduct;
>
> (B) Confinement is necessary to avoid depreciating the seriousness of the offense or confinement is particularly suited to provide an effective deterrence to others likely to commit similar offenses; or
>
> (C) Measures less restrictive than confinement have frequently or recently been applied unsuccessfully to the defendant[.]

Id. § 40-35-103(1)(A)-(C). These considerations are set out in the alternative. Additionally, "[t]he potential or lack of potential for the rehabilitation or treatment of the defendant should be considered in determining the sentence alternative or length of a term to be imposed." Id. § 40-35-103(5). In cases of misdemeanor sentencing, the sentencing court has the authority to place the defendant on probation either after service of part of the sentence in confinement, whether periodic or continuous, or immediately after sentencing. See Tenn. Code Ann. § 40-35-302(e)(1)-(2).

The record before this court includes a transcript of the sentencing hearing held on July 7, 2000; the presentence investigation report; and evidence admitted at the bench trial, including copies of the official lab report and the transcript of the tape-recorded conversation between the informant and the defendant. The record shows that the defendant, while on bond for the offense of casual exchange of a controlled substance, was subsequently arrested and indicted for possession of drug paraphernalia and possession of marijuana on May 9, 1997.[3] Then, while on bond for these two May offenses, the defendant was arrested in Sevier County on October 27, 1997, for possession of marijuana and DUI. While on probation for the Sevier County offenses, the defendant failed a drug screening test and was referred to the Helen Ross McNabb Center for drug rehabilitation, a program he completed in 1998. The defendant was also given a drug screening test on May 4, 2000, when

---

[3]The defendant pled guilty to these charges, indictment numbers C-10639 and C-10640, and was sentenced to eleven months and twenty-nine days on each count, with the sentences to be served concurrently as to each other and consecutively as to the sentence in this cause, indictment number C-10033. All three sentences were ordered following the one sentencing hearing held on July 7, 2000.

he reported to Officer Mike Lane in conjunction with the preparation of his presentence investigation report prior to his scheduled sentencing hearing on July 7, 2000. That May 4 test was positive for the presence of marijuana.

The defendant testified in his own behalf at the sentencing hearing and stated that he had "kept my nose clean" for the last three years, or since 1997. On cross-examination, the defendant sought to clarify what he meant by "keeping his nose clean." His second choice of phrases was that he had not "been in any trouble since '97." Apparently what he meant was that he had not been arrested. The defendant admitted to continuing to use marijuana up until some "two to three weeks" prior to the sentencing hearing on July 7, 2000. The defendant stated that he was "perhaps mentally" addicted to marijuana. The defendant failed to take any responsibility for the marijuana or drug paraphernalia that was found in his residence on May 9, 1997, but rather implied that he just happened to be in his bed at the time police officers came to arrest his roommate for a probation violation and this unfortunate wrong-time-wrong-place circumstance led to his being arrested along with his roommate. The defendant also revealed an aversion to structured drug abuse rehabilitation programs, stating that he would rather "[s]tay clean myself before having to ask for help from a drug treatment." The defendant's plan for staying clean all by himself is to move from Maryville to Gatlinburg, where he can "get away from some of the -- several friends I'm in (sic) [with] right now." The defendant testified that he was not presently taking part in any sort of drug abuse program.

In finding this defendant unsuitable for probation alone but suitable for a period of "shock" incarceration followed by probation, the trial court stated the following at the conclusion of the sentencing hearing:

> In 10033, you are ordered to serve 90 days of that sentence in jail. You will be eligible, after 60 days, to serve the balance of it in an inpatient treatment facility, if you want to. You will be eligible for work release during the 90-day period and serve the balance of it on probation.
>
> . . . .
>
> Okay. Now, the reason that I am ordering you to serve that amount of time in jail is very simple. First of all, you have a previous conviction for possession. You were allowed to serve that on a type of release and [you] violated that release. Also, while these charges were pending, you got arrested once for casual exchange and then arrested again. And while all that was going on, you were still smoking up to five joints a day, even after you pled guilty on two cases, until just very recently. Probably so recently that you couldn't pass a drug screen today, if you were given one.

So, that tells me that the likelihood of your being rehabilitated without some rather severe punishment is very minimal. Because you've had that opportunity before and even facing up to three years in jail, you still continued to use. That tells me two things: Number one, you're not very impressed with your marijuana use and not very impressed with the fact that it's illegal; and you probably think because you are bright and have attended college and are about to graduate and that you work hard, that nobody is going to do anything to you. I mean, otherwise, you're just being plain stupid. And I don't think you're stupid. Maybe you're playing a bit of an ostrich routine and just don't think you'll ever be found out and nothing is ever really going to happen. But marijuana use is a problem for you. Anybody that continues to use facing jail time has got a problem. Because anybody with half a brain would stop doing whatever it was that put them in jeopardy of going to jail at least until they found out whether they were going to go to jail or not. And then you think, well, I got away with that, I'll start back. See, you weren't even able to do that.

The record shows that the defendant has frequently and recently been afforded less restrictive measures than confinement and, in each case, these measures have proven unsuccessful. As to the defendant's potential for rehabilitation or treatment, we agree with the trial court that the defendant is unable to accept responsibility for his actions and appears to simply deny the seriousness of his addiction. Based on the principles of sentencing and the evidence in the record, we conclude that the trial court ordered an appropriate sentence both as to length and manner of service.

Our conclusion is consistent with other recent decisions of this court. In State v. Mecord, 815 S.W.2d 218, 218 (Tenn. Crim. App. 1991), the defendant was convicted of the misdemeanor offenses of distribution of less than one-half ounce of marijuana and of simple possession of cocaine. The trial court sentenced the defendant to two concurrent terms of eleven months and twenty-nine days to be served in confinement. The defendant contended that he was entitled to probation after serving a short period of shock incarceration. This court noted that the defendant "admitted smoking marijuana after work to 'calm down.'" Id. at 220. The defendant in Mecord had no prior arrests or convictions but had a history of drug and alcohol abuse. The trial judge found that defendant to be "[u]ntruthful and evidencing no remorse except for having been apprehended." Id. The conclusion of the trial judge that probation was not in the "best interests of the public, the defendant, or justice" was affirmed. Id.

In State v. Gerald Scott Long, No. 03C01-9707-CR-00260, 1998 WL 474083, at *1 (Tenn. Crim. App. July 29, 1998), the defendant appealed the manner of service of his concurrent sentences for casual exchange and reckless endangerment. The trial court ordered both sentences served in the county jail. The defendant had a history of petty offenses. The trial court took particular note of the fact that the defendant "[had] been given past chances to rehabilitate himself through probation, drug treatment, shock incarceration, and the like, yet he [had] continued to disregard the law." Id. The

trial court found that these factors outweighed the defendant's "good work history." Id. at *2. This court affirmed the manner of service of the sentences. Id.

The defendant here received a sentence "justly deserved in relation to the seriousness of the offense," and evidencing no "unjustified disparity in sentencing." Tenn. Code Ann. § 40-35-102(1)-(2). This issue is without merit.

## CONCLUSION

Having reviewed the entire record on appeal, we conclude that the evidence was sufficient to convict the defendant of casual exchange of a controlled substance. We further conclude that the defendant has failed to carry his burden of showing that the manner of service of the sentence imposed by the trial court was inappropriate. The judgment of the trial court, both as to conviction and sentence, is affirmed.

_____
ALAN E. GLENN, JUDGE