IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
February 14, 2001 Session

## STATE OF TENNESSEE v. STEVEN T. WALL

**Appeal from the Circuit Court for Montgomery County**
**No. 38949     John H. Gasaway, III, Judge**

---

**No. M2000-01059-CCA-R3-CD - Filed April 16, 2001**

---

The defendant was convicted by a Montgomery County jury of driving under the influence of an intoxicant (DUI) and vehicular assault. In this appeal as of right, the defendant raises two issues for our review: (1) whether the evidence was sufficient to support his convictions; and (2) whether both convictions can stand without violating his right to be protected against double jeopardy. Having reviewed the entire record, we conclude that the evidence is sufficient to support convictions for DUI and vehicular assault, but that both convictions cannot stand without violating principles of double jeopardy. The conviction for DUI is, therefore, vacated. The remaining conviction for vehicular assault and the sentence imposed by the trial court are affirmed.

**Tenn. R. App. P. 3; Judgment of the Circuit Court Affirmed in Part, Vacated in Part**

ALAN E. GLENN, J., delivered the opinion of the court, in which GARY R. WADE, P.J., and ROBERT W. WEDEMEYER, J., joined.

Gregory D. Smith, Clarksville, Tennessee, for the appellant, Steven T. Wall.

Paul G. Summers, Attorney General and Reporter; Elizabeth T. Ryan, Assistant Attorney General; John Wesley Carney, Jr., District Attorney General; and James B. Crenshaw, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

The defendant, Steven T. Wall, was convicted by a Montgomery County jury of vehicular assault, a Class D felony, and driving under the influence (DUI), first offense, a Class A misdemeanor. The defendant was sentenced to four years as a Range I, standard offender for vehicular assault and eleven months and twenty-nine days for DUI, with the terms to be served concurrently. The jury assessed fines of $3,000 and $750 respectively. In this appeal as of right, the defendant presents two issues for our review:

I.   Whether the evidence was sufficient to support his convictions;
     and

II.  Whether double jeopardy principles prohibit his being convicted
     of both offenses.

Having reviewed the entire record, we conclude that the evidence is sufficient to support convictions for DUI and vehicular assault but that both convictions cannot stand. The conviction for DUI, a lesser-included offense of vehicular assault, is vacated, and the conviction for vehicular assault is affirmed.

## FACTS

John LaRocca, a man in his early thirties at the time of the offense and the victim in this case, owned and operated Motor Town Muffler in Dickson, Tennessee. LaRocca lived with his wife in Clarksville, Tennessee. The defendant, also in his early thirties, operated heavy equipment for his father's construction company in Clarksville. The defendant lived with his wife in Cunningham, south of Clarksville. Both men traveled Highway 48 to and from work each day, though in opposite directions. On Friday, December 13, 1996, LaRocca had left his business in Dickson around 3:00 p.m., checked on a boat that was being repaired in White Bluff, and then headed north on Highway 48 on his daily trip home to Clarksville.

The defendant had spent the day operating a backhoe at a work site with two coworkers, Timmy Jones and Louis Gibson. Because he had left his 1993 white Chevrolet pickup truck at a Clarksville car wash, his coworkers drove him to get his truck slightly before 5:00 p.m. The defendant then headed south on Highway 48 toward home. He spoke to his wife on his mobile phone around the time he reached the bridge crossing the Cumberland River. After a quick stop at the Triangle Market, where the defendant recalled picking up two packages of cigarettes, he continued down the two-lane highway. He was within some three miles of home when he apparently decided to pass two cars driving in front of him. Ahead was a hill; the highway was marked with a double yellow line; on the right was Montgomery Central Elementary School where an after-school activity was underway. It was not possible to see if another vehicle was approaching from the other side, headed north toward Clarksville. On this Friday, at about 5:15 p.m., another vehicle was coming up over the hill; it was a black and tan 1989 Silverado pickup truck driven by the victim.

Cynthia Moseley testified that on Friday, December 13, 1996, she was driving her usual route home from her job of twenty-seven years as supervisor of accounts payable at Austin Peay State University. She was headed south on Highway 48 toward her home in Cunningham. She testified to the following sequence of events:

A. Well, yes sir. I stopped at the high school.[1] A car in front of me was turning and as I was getting up my speed to come up the little hill there, I noticed in my side mirror that there was a vehicle coming around me.

Q. Do you know what kind of vehicle that was?

A. Not at that time, no.

Q. How far was that vehicle behind you?

A. Well, I really can't determine. I don't know how to determine how close he was, but I knew that he was coming around me because I could see the lights in my side mirror and there were other vehicles behind me so apparently, you know, he was passing others as well as me.

Q. So there was a line of vehicles behind you?

A. Yes, sir. Or -- I wouldn't say there was a line, but I know there was a vehicle behind me.

Q. Okay, and you saw those headlights coming up beside you?

A. Yes. I knew that it was not the car behind me, their lights.

Q. So there was at least one vehicle further behind you and then this person that was passing?

A. Yes.

. . . .

Q. What happened as that vehicle got up beside you?

A. When he was right beside me, there was another vehicle coming and they hit head on.

---

[1]Montgomery County High School is located slightly north of Montgomery Central Elementary School, therefore, the witness, traveling south on Highway 48, passed the high school just before getting to the elementary school.

Randy Robinson, a Tennessee state trooper, testified that at approximately 5:20 p.m. on December 13, 1996, he received a dispatch concerning an accident on Highway 48 and 13 in front of Montgomery Central Elementary School. He arrived at the scene at 5:40 p.m. Trooper Robinson testified that Highway 48 is a two-lane, asphalt road. He said that the defendant was inside the ambulance when he arrived on the scene, and he entered the ambulance to talk to the defendant. He noticed a strong smell of alcohol about the defendant. He asked the defendant if he was operating the vehicle involved in the collision, and the defendant stated that he was. Trooper Robinson was unable to get any other information because the defendant was being treated for his injuries. Subsequently, the defendant was airlifted to Vanderbilt University Medical Center in Nashville. Trooper Robinson testified that while he was surveying the scene of the accident, he checked the white pickup truck that the defendant admitted he was driving. Trooper Robinson noted a smell of alcoholic beverage in the cab of the truck as well.

Thomas Aldridge, a medical technologist for sixteen years at Vanderbilt University Medical Center, testified that on December 13, 1996, he performed a serum ethanol level blood test on the defendant. A quality control test was run to make sure that everything was working properly with the kit made by Abbott Diagnostic Laboratories and regularly used at Vanderbilt to test for ethyl alcohol in the blood. Aldridge testified that the blood ethanol level for the defendant was .194%. Aldridge testified that the test he ran on the defendant's blood was generally accepted in the scientific community as reliable for determining ethyl alcohol content of the blood. The discharge summary from Vanderbilt Hospital for the defendant, admitted on December 13, 1996, and discharged on December 16, 1996, stated the following:

PRINCIPAL DIAGNOSIS:      Mandibular fracture

SECONDARY DIAGNOSES:      1. Concussion.
                          2. Tertiary alcohol intoxication.

Louis Gibson testified as a witness for the defense, stating that he worked the same job site as the defendant all day on the day of the collision. Gibson operated the bulldozer clearing a lot, and the defendant operated the backhoe. Gibson testified that the defendant did not consume any alcoholic beverages that day, including during lunch. Gibson and another coworker, Timmy Jones, drove the defendant to pick up his truck from the car wash at the end of the work day, and then Gibson and Jones left town, traveling south on the same highway as the defendant. Gibson testified that he and Jones pulled into the Triangle Market on Highway 48 as the defendant was coming out. Gibson could not remember if the defendant was carrying anything. The three men spoke briefly, and the defendant left to continue his route home. Gibson testified that he did not smell any alcohol on the defendant. Gibson arrived at the scene of the collision right after it happened.[2] Gibson testified that the defendant was unconscious and would not respond to anything Gibson said to him.

---

[2]The record is unclear as to whether Timmy Jones was still riding with Louis Gibson. Jones was not a witness at the trial.

He testified that he stuck his head in the window on the driver's side of the defendant's truck and did not smell any alcohol.

On cross-examination, Gibson testified that he had worked for the defendant and the defendant's father, Bobby Wall, for approximately three years and was an employee on the date of the collision. Gibson testified that he is now operating his own business. The defendant's wife testified that Gibson is her brother-in-law.

Charles Daniel Spritz testified that he occasionally serviced the equipment owned by Bobby Wall Construction. On Friday, December 13, 1996, he received a page from the defendant concerning a bulldozer that had a mechanical problem. Spritz met the defendant at the company office at about 4:30 p.m. and talked for ten or twenty minutes. Spritz testified that he did not smell any alcohol on the defendant. Spritz checked on the bulldozer and then left about five minutes after the defendant. Spritz was also traveling south out of Clarksville on the same highway as the defendant. Spritz testified that he arrived at the scene right after the collision. He went over to the defendant's truck and observed that the defendant was not making any sounds. Spritz also testified that he did not detect the odor of alcohol in the truck.

Additionally, the defendant's wife testified that she detected no signs of alcohol consumption in the defendant's voice when he spoke with her shortly before he stopped at the Triangle Market on his way home. She noted that the family had plans to leave immediately after her husband got home to spend the weekend vacationing in Gatlinburg.

James Kraus testified that in December of 1996 he was working for Bobby Wall Construction as a "punchlist man," or a general repair man. Kraus was driving home from work on Friday, December 13, 1996. His route was the same as that of the defendant, Mr. Gibson, and Mr. Spritz: south on Highway 48 to Cunningham, Tennessee. Kraus testified that as he came up on the collision, Danny Spritz, who apparently recognized the company truck Kraus was driving, waved and yelled at him to come over to where Spritz was standing. Kraus testified that Spritz then told him that the defendant had been in a bad accident and asked Kraus if he had a phone to call the defendant's family. Kraus testified that both drivers appeared unconscious to him, though he stayed a distance away from the vehicles. Kraus testified further that he did not notice any intoxicants around the scene of the collision.

The defendant testified on his own behalf and denied that he had consumed any alcohol on the day of the collision. He was unable to offer any explanation for the testimony of Trooper Robinson concerning the odor of alcohol on his person and in the cab of his truck, or his blood alcohol level reported by Vanderbilt Hospital.

## ANALYSIS

### Issue I.  Sufficiency of the Evidence

The defendant contends that the evidence was insufficient to support convictions for DUI and vehicular assault.  Essentially, the defendant asserts that the testimony of his four witnesses, each of whom testified that there were no signs that he had consumed alcohol on the day of the collision, was overwhelming and in direct contradiction of Trooper Robinson's testimony.  The State contends that the evidence is sufficient.

On appeal, the State is entitled to the strongest legitimate view of the evidence and all reasonable inferences that might be drawn from the evidence.  See State v. Cabbage, 571 S.W.2d 832, 835 (Tenn. 1978).  "[T]he weight and credibility of testimony of a witness, and the reconciliation of conflicts in testimony are matters entrusted exclusively to the jury as the triers of fact."  Byrge v. State, 575 S.W.2d 292, 295 (Tenn. Crim. App. 1978) (citing Withers v. State, 523 S.W.2d 364 (Tenn. Crim. App. 1975)).  In a criminal action, a conviction may be set aside only when the reviewing court finds that the "evidence is insufficient to support the findings by the trier of fact of guilt beyond a reasonable doubt."  Tenn. R. App. P. 13(e); see also Jackson v. Virginia, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789, 61 L. Ed. 2d 560 (1979) (concluding that courts reviewing sufficiency of evidence must determine "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt").  A jury verdict, approved by the trial judge, accredits the witnesses for the State and resolves any conflicts in the testimony in favor of the State.  See State v. Hatchett, 560 S.W.2d 627, 630 (Tenn. 1978) (citations omitted).

### A.  Driving Under the Influence

The DUI statute states, in pertinent part, the following:

> **Driving under the influence of intoxicant, drug or drug producing stimulant prohibited — Alcohol concentration in blood or breath. —** (a) It is unlawful for any person to drive or to be in physical control of any automobile or other motor driven vehicle on any of the public roads and highways of the state, or on any streets or alleys, or while on the premises of any shopping center, trailer park or any apartment house complex, or any other premises which is generally frequented by the public at large, while:
>
> (1) Under the influence of any intoxicant, marijuana, narcotic drug, or drug producing stimulating effects on the central nervous system; or

(2) The alcohol concentration in such person's blood or breath
is ten-hundredths of one percent (.10%) or more.

Tenn. Code Ann. § 55-10-401 (1998). The defendant was indicted in Count 1 for violation of § 55-10-401(a)(2) and convicted of that count, based on evidence of an alcohol level of nearly twice that established by law as constituting a DUI offense, or .194%.[3]

The evidence at trial showed that Trooper Robinson, who reported within minutes to the scene, spoke to the defendant while he was sitting up in the ambulance prior to being airlifted to Vanderbilt Hospital. Robinson, a nineteen-year veteran state trooper at the time of the offense, testified that in the preceding year alone he had made eighty-seven arrests for DUI and had probably investigated thousands of DUIs over the course of his career. Trooper Robinson testified that he noticed a strong smell of alcohol about the defendant and asked him if he was operating the vehicle in the collision, and the defendant acknowledged that he was. Trooper Robinson also testified that there was a smell of alcohol in the cab of the defendant's truck. Additionally, the report on the blood alcohol test performed at Vanderbilt Hospital revealed a blood alcohol level well above the legal limit. Although the defendant sought to discredit this evidence with various theories, including that the blood tested was not really his, there was absolutely no credible evidence to refute the testimony of Thomas Aldridge, medical technologist at Vanderbilt Hospital.

We conclude that the evidence was sufficient to support the defendant's conviction for DUI. This issue is without merit.

### B. Vehicular Assault

The vehicular assault statute states, in pertinent part, the following:

A person commits vehicular assault who, as the proximate result of the person's intoxication as set forth in § 55-10-401, recklessly causes serious bodily injury to another person by the operation of a motor vehicle. For the purposes of this section, "intoxication" includes

---

[3]The defendant was also indicted according to Tennessee Code Annotated Section 55-10-401(a)(1) in Count Two. At the sentencing hearing, the trial court clarified the discrepancy between the indictment and the jury verdict form in the following:

> THE COURT: You're correct. This always presents a little bit of confusion. The DUI was alleged under two different theories. And, so, actually, I think what I really did was I basically merged Counts One and Two, permitted the jury to make a decision concerning the way the offense was committed, if at all, and then vehicular assault, which was Count Three was then numbered Count Two on the verdict form.
>
> So, despite the inconsistency between the counts as reflected on the indictment and the count numbers as reflected in the verdict form, Mr. Wall was convicted of DUI and he was convicted of vehicular assault.

alcohol intoxication as defined by § 55-10-408, drug intoxication, or both.

Tenn. Code Ann. § 39-13-106(a).

As to the elements of the offense of vehicular assault, we have determined above that the evidence is sufficient to support a conviction for DUI and, therefore, can conclude that the defendant was intoxicated, that is, that the concentration of alcohol in his blood was .10% or more, at the time of the collision on December 13, 1996. There is no question that the defendant was operating the white Chevrolet truck, a motor vehicle.

As to the element of recklessness, with respect to the circumstances surrounding the conduct or the result of the conduct, recklessness is proven beyond a reasonable doubt when the evidence shows that the person "is aware of but consciously disregards a substantial and unjustifiable risk that the circumstances exist or the result will occur. The risk must be of such a nature and degree that its disregard constitutes a gross deviation from the standard of care that an ordinary person would exercise under all the circumstances as viewed from the accused person's standpoint[.]" Tenn. Code Ann. § 39-11-106(a)(31). Here, the defendant, having consumed sufficient alcohol to register a blood alcohol level of .194%, attempted to pass at least two vehicles, on a hill, on a two-lane highway, in an elementary school zone marked with a double yellow line, while unable to see oncoming traffic, at near-dark, and while an after-school function was taking place. Recklessness was proven beyond a reasonable doubt.

As to the element of causing serious bodily injury, the law defines such injury as bodily injury that involves:

> (A) A substantial risk of death;
>
> (B) Protracted unconsciousness;
>
> (C) Extreme physical pain;
>
> (D) Protracted or obvious disfigurement; or
>
> (E) Protracted loss or substantial impairment of a function of a bodily member, organ or mental faculty.

Tenn. Code Ann. § 39-11-106(a)(34). The victim testified to the following injuries as a result of the collision:

> A. I received two disc - - messed up my neck, number four and five. Broken nose, crushed sinuses, my right eye laid wide open. I got a hematoma in the back of my head, I still got a bald spot in the back

of my head. I have four screws in my left hip. I have a rod in my femur bone where my femur shattered, just completely shattered in about five different parts. My right foot, I have nine screws, two pins and a couple of plates in it. They took one pin out last year and hit the nerve. And them my left foot, they got another screw in it and a big staple that kind of keeps it in place. And my brain was bleeding on both sides, and I'm here talking to you.

Q. Was there a period of time when you couldn't walk after the accident?

A. Yes, for about three months I was in a wheel chair [sic].

The victim also testified that, thus far, he has had at least eight surgeries associated with his injuries. At the time of the trial, the victim was able to walk, but very slowly and often with the use of a cane. He is not able to "run or jump." The victim testified that he did try to work:

A. I did try to work for about two weeks pumping gas. To me that was the easiest thing in the world, but I lasted only about two weeks, about five hours a day and I had a stroke the second week. My mind wants to do it, but my body is not going to let me do it. And they told me there not to try to push myself.

Serious injury was proven beyond a reasonable doubt.

We conclude that the evidence was sufficient to convict the defendant of vehicular assault. This issue is without merit.

### Issue II.  Double Jeopardy

The defendant argues, and the State agrees, that he cannot be convicted of both DUI and vehicular assault without violating his constitutional protection against double jeopardy. On this issue, the law is clearly on the side of the defendant. This court concluded in State v. Rhodes, 917 S.W.2d 708 (Tenn. Crim. App. 1995), that the "legislature intended for vehicular assault to include DUI as a lesser included offense. Thus, for double jeopardy purposes, a person cannot be punished separately for DUI and vehicular assault for one act of driving under the influence that causes serious bodily injury." Id. at 712-13. In Rhodes, we held that the trial court erred when determining that the defendant's driving his car from the workplace to the location of the accident was a different DUI offense than the one necessary to sustain the vehicular assault offense. See id. at 713. The record in Rhodes showed evidence of a single DUI offense that resulted in the collision and caused serious bodily injury to the victim. See id. This court held that "the defendant could only be punished for one offense and the trial court should have entered only the judgment of conviction for the vehicular assault offense." Id. at 714.

Here, as in <u>Rhodes</u>, one episode of driving under the influence of alcohol recklessly caused serious bodily injury to the victim. Therefore, we conclude that both convictions cannot stand. In this case, the conviction for the lesser-included offense of DUI is vacated.

## <u>CONCLUSION</u>

Although we have concluded that the evidence is sufficient to support convictions for both DUI and vehicular assault, we also conclude, in conformance with the law in this state, that both convictions cannot stand. The separate judgment of conviction for DUI is vacated. The remaining conviction for vehicular assault and the sentence imposed by the trial court are affirmed.

_____
ALAN E. GLENN, JUDGE

-10-